730 A.2d 843

NORTH BERGEN REX TRANSPORT, INC. A NEW JERSEY CORPO-RATION; AND MURRAY BARNETT, PLAINTIFFS–APPEL-LANTS, v. TRAILER LEASING COMPANY, A DIVISION OF KELLER SYSTEMS, INC., DEFENDANT–RESPONDENT.

Argued January 21, 1999—Decided June 23, 1999.

562

564

*Robert A. Recio,* argued the cause for appellants (*Gallo Geffner & Fenster,* attorneys; *Mr. Recio* and *Debra M. Polglaze,* on the briefs).

*Ronald H. Balson,* a member of the Illinois bar, argued the cause for respondent (*Cole, Schotz, Meisel, Forman & Leonard,* attorneys; *Mr. Balson* and *Carl A. Rizzo,* on the brief).

The opinion of the Court was delivered by

COLEMAN, J.

This appeal involves a commercial lease that requires the lessee to pay reasonable attorneys' fees in the event the lessor has to procure legal services to enforce the lease agreement. The critical issue raised is whether a lessor who does not prevail on all of its claims is entitled to 100% of its attorneys' fees plus interest.

The trial court awarded the lessor Trailer Leasing Company (TLC) 100% of its attorneys' fees and 18% interest on those fees. The Appellate Division affirmed the award of attorneys' fees but reversed and remanded with regard to the interest assessed. We granted the lessee's petition for certification. 156 *N.J.* 388, 718 *A.*2d 1217 (1998). We hold that it was improper to award 100% of the attorneys' fees requested and that no prejudgment interest should be awarded on the reasonable attorneys' fees.

I

In 1992, plaintiff North Bergen Rex Transport, Inc. (Rex) conducted an interstate trucking business, and defendant TLC was in the business of leasing trailers. During that year, Rex submitted a credit application to lease trailers from TLC. The application was approved subject to the personal guarantee of plaintiff Murray Barnett, Rex's sole shareholder.

Between October 1992 and March 1994, TLC leased as many as ninety trailers to Rex. Separate lease documents with identical terms and conditions were executed for each trailer. Pursuant to

the lease agreements, TLC sent Rex monthly invoices reflecting the charges for each of the trailers. The leases contained the following two provisions regarding interest and attorneys' fees:

7. Lessee agrees to pay the rentals to Lessor for the full term as computed on the front of this agreement. There shall be no proration of charges for partial terms. Invoices not paid on time shall carry interest at the rate of 1–1/2% per month from the date due until paid.

. . . .

24. Lessee shall pay and discharge or promptly reimburse Lessor for all costs, expenses and *reasonable attorney's fees,* which shall be incurred and expended by Lessor in enforcing the covenants and agreements of this [Lease] whether by the institution of litigation or by the taking of advice of counsel or otherwise.

[ (Emphasis added).]

In 1993, Rex became delinquent in its lease payments to the extent of $140,000. In an attempt to satisfy that debt, Rex and TLC negotiated a payment plan whereby Rex was required to pay a minimum of $5,000 per week until the obligation was satisfied and to return some of the trailers it had leased from TLC. On or about February 26, 1994, the parties memorialized their agreement in a writing, which stated in pertinent part: "As we discussed[,] the $5000.00 is only a minimum and your cooperation with increasing this weekly check will be appreciated. In addition[,] if your account balance is not steadily reduced, TLC will need to receive a larger commitment from N.B. Rex Transport."

For approximately a month after the parties had memorialized their agreement, Rex paid the weekly installments of $5,000 or more and returned some of the trailers. However, because there were several trailers still retained by Rex, its debt increased. Thus, on March 22, 1994, TLC demanded that plaintiffs pay the entire balance and threatened to sue. Even with the threat of litigation, Rex made only nineteen out of twenty-nine payments between February 25, 1994, and September 9, 1994.

Notwithstanding the fact that Rex was delinquent under the agreement, on March 30, 1994, plaintiffs filed a four-count complaint seeking a declaration of rights pursuant to *N.J.S.A.* 2A:16–

50 to –58 against TLC based on alleged rental and repair over-charges. In their complaint, plaintiffs asserted that they had fully complied with their obligations under the February 1994 agreement.

TLC filed an answer and a counterclaim. The answer referred to the February 1994 agreement as an admission that plaintiffs owed TLC $5,000 weekly installments for delinquent rental and other charges. The counterclaim sought judgment against plaintiffs for the lease delinquencies, interest at the rate of one and one-half percent per month (which translates to eighteen percent annually) for all delinquent charges, costs, expenses, and attorneys' fees incurred.

The parties filed cross-motions for summary judgment. In April 1995, the trial court granted partial summary judgment in favor of TLC in the amount of $100,000. Between August 8 and August 22, 1995, a four-day trial was held on the remaining claims. At the onset of the trial, TLC's base claim was reduced from $211,681.35 to $111,681.35 after a $100,000 payment was made pursuant to the partial summary judgment. Certain adjustments conceded by TLC at the beginning of the trial further reduced the claim to $103,637.92. TLC requested $54,993.84 in pretrial attorneys' fees and costs plus $435 in repairs on returned trailers, which increased the amount being sought to $159,066.76.

In September 1996, thirteen months after the trial ended, the trial court issued a letter opinion. It concluded that TLC had overcharged plaintiffs by $75,498.05 and issued plaintiffs a credit for that amount. The trial court also concluded that the $54,-993.84 in pretrial legal fees was appropriate. To determine the exact amount of pretrial and trial attorneys' fees, TLC's counsel was required to submit a certification.

In April 1997, the trial court issued a final judgment against plaintiffs, jointly and severally, in favor of TLC in the amount of $161,986.20. The amount reflected: credits TLC owed plaintiffs, interest on delinquent rental charges from July 1995 to January 1997, and TLC's attorneys' fees and costs in the amount of

$107,554.10 ($54,993.84 pretrial and $52,560.26 for trial and post-trial), including eighteen percent interest on the attorneys' fees. The trial court also allowed an additional $2,088.87 in attorneys' fees in connection with a motion for reconsideration of the verdict.

The Appellate Division, in an unpublished opinion, affirmed TLC's entitlement to receive attorneys' fees based on the express language in the leases. The panel reversed the award of eighteen percent interest on attorneys' fees because the express language in the lease agreements referred only to interest concerning rental payments, and the provision permitting reimbursement for attorneys' fees did not address interest. Although the court found no contractual basis to allow interest on the attorneys' fees, it nonetheless remanded the matter to the trial court "to recompute the pre-judgment [sic] interest, if any, which may be due and owing on such award of attorney's fees. *See R.* 4:42–11(a)."

## II

The threshold issue involving the reasonableness of attorneys' fees is whether New Jersey or Illinois law governs. The lease agreements addressed the choice of law question. They provide that "all terms, provisions, and performances contemplated by this lease shall be governed by the laws of the State of Illinois." TLC argues that the lease provisions should be enforced, and thus, Illinois law should apply.

■ "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 *N.J.* 324, 341, 614 *A.*2d 124 (1992). However, New Jersey law will govern if:

"(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the

determination of the particular issue and which * * * would be the state of the applicable law in the absence of an effective choice of law by the parties." [*Id.* at 342, 614 *A.*2d 124 (quoting *Restatement (Second) of Conflicts of Laws* § 187 (1969) (*Restatement* )).]

■ The substantial relationship standard under the *Restatement* has been met in the present case because TLC is headquartered in Illinois. Another well-established principle of choice of law is controlling, however, namely that the procedural law of the forum state applies even when a different state's substantive law must govern. *Heavner v. Uniroyal, Inc.,* 63 *N.J.* 130, 135, 305 *A.*2d 412 (1973); *Du–Wel Prods., Inc. v. United States Fire Ins. Co.,* 236 *N.J.Super.* 349, 362, 565 *A.*2d 1113 (App.Div.1989), *certif. denied,* 121 *N.J.* 617, 583 *A.*2d 316 (1990). This Court has held that attorneys' fees are a matter of practice and procedure, rather than of substantive law. *Busik v. Levine,* 63 *N.J.* 351, 372–73, 307 *A.*2d 571, *appeal dismissed,* 414 *U.S.* 1106, 94 *S.Ct.* 831, 38 *L.Ed.*2d 733 (1973); *State v. Otis Elevator Co.,* 12 *N.J.* 1, 5–6, 95 *A.*2d 715 (1953). This Court has also observed that it is not "inappropriate to think of prejudgment interest as a matter of procedure in the context of law-making." *Busik, supra,* 63 *N.J.* at 371, 307 *A.*2d 571. Thus, because the award of attorneys' fees and interest is a procedural rather than a substantive law issue, we conclude that the correct choice of law is New Jersey law.

■ New Jersey has a strong policy disfavoring shifting of attorneys' fees. *McGuire v. City of Jersey City,* 125 *N.J.* 310, 326, 593 *A.*2d 309 (1991). We have generally adhered to the so-called "American Rule," meaning that " 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.' " *Rendine v. Pantzer,* 141 *N.J.* 292, 322, 661 *A.*2d 1202 (1995) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 *U.S.* 240, 247, 95 *S.Ct.* 1612, 1616, 44 *L.Ed.*2d 141, 147 (1975); *Gerhardt v. Continental Ins. Cos.,* 48 *N.J.* 291, 301, 225 *A.*2d 328 (1966)). Although the basic approach and philosophy regarding the allowance of counsel fees has been "that sound judicial administration is best advanced if litigants bear their own counsel fees," *Department of Envtl. Protection v. Ventron Corp.,* 94 *N.J.* 473,

504, 468 A.2d 150 (1983), a party may agree by contract to pay attorneys' fees. *Community Realty Management, Inc. v. Harris,* 155 *N.J.* 212, 234, 714 *A.*2d 282 (1998); *Satellite Gateway Communications, Inc. v. Musi Dining Car Co.,* 110 *N.J.* 280, 286, 540 *A.*2d 1267 (1988). That exception to the general rule has been incorporated into *Rule* 4:42–9. However, even where attorney-fee shifting is controlled by contractual provisions, courts will strictly construe that provision in light of the general policy disfavoring the award of attorneys' fees. *McGuire, supra,* 125 *N.J.* at 327, 593 *A.*2d 309; *Alcoa Edgewater No. 1 Fed. Credit Union v. Carroll,* 44 *N.J.* 442, 448–49, 210 *A.*2d 68 (1965). Consequently, we will examine the reasonableness of the attorneys' fees awarded and the appropriateness of prejudgment interest on the attorneys' fees under New Jersey law.

### III

Plaintiffs argue that it is inappropriate for TLC to receive 100% of its attorneys' fees because it did not receive 100% of the relief it was seeking. Plaintiffs contend that although the trial court rendered a net judgment in favor of TLC, the amount was reduced significantly because of TLC's improper billing practices.

The threshold issue in determining whether an attorneys' fee award is reasonable is whether the party seeking the fee prevailed in the litigation. *Singer v. State,* 95 *N.J.* 487, 494, 472 *A.*2d 138, *cert. denied,* 469 *U.S.* 832, 105 *S.Ct.* 121, 83 *L.Ed.*2d 64 (1984). Because the focus should be on the ultimate results achieved through the litigation, a two-pronged test has been established to determine when a party seeking fee shifting has been a prevailing party. *Ibid.* The first part of the *Singer* test requires "[a] party [to] demonstrate that his lawsuit was causally related to securing the relief obtained; a fee award is justified if [the party's] efforts are a 'necessary and important' factor in obtaining the relief." *Ibid.* The first prong requires a factual causal nexus between the pleading and the relief ultimately received. *Ibid.*

■ The second part of the *Singer* test requires the party seeking attorneys' fees to show that "the relief granted had some basis in law." *Ibid.* The second prong requires both a factual and legal determination. *Ibid.* The party seeking attorneys' fees need not recover all relief sought, but rather, there must be " 'the settling of some dispute that affected the behavior of the [party asked to pay attorneys' fees] towards the [party seeking attorneys' fees].' " *Davidson v. Roselle Park Soccer Fed'n,* 304 *N.J.Super.* 352, 357, 700 *A.*2d 900 (Ch.Div.1996) (quoting *Feriozzi Co. v. City of Atlantic City,* 268 *N.J.Super.* 310, 314, 633 *A.*2d 581 (Law Div.1993)) (noting because eleven-year-old female soccer player tried out for and made all-boys team prior to litigation brought under our Law Against Discrimination, parents could not demonstrate existence of causal connection between litigation and ultimate result).

■ In the present case, TLC satisfies the first part of the *Singer* test. In the counterclaim, it sought past-due lease payments totaling $220,000. At the conclusion of the trial, TLC's claims were reduced to $154,432.10, which was approximately seventy percent of the amount sought. As noted previously, $100,000 of the $154,432.10 was determined on a pretrial motion for summary judgment. Nonetheless, TLC won a substantial portion of its claims for the over-due lease payments.

TLC also satisfies the second part of the *Singer* test because the relief sought was based on the contract that required Rex to pay the rental charges in a timely manner. Therefore, there was a legal basis to compel payment under the lease. Accordingly, TLC was the prevailing party. A prevailing party on a counterclaim should be treated the same as if that party were a plaintiff in the litigation. *R.* 4:5–2.

## IV

Plaintiffs argue that because TLC's claims were reduced by at least thirty percent, TLC should be denied any attorneys' fees.

As an alternative, plaintiffs argue that TLC should be limited to only a reasonable portion of its attorneys' fees.

■ *Singer* recognized that when a prevailing party has not been successful on all of its claims, an award of attorneys' fees based on an hourly rate times the hours spent may result in an excessive fee. *Singer, supra,* 95 *N.J.* at 499–500, 472 *A.*2d 138. Before *Singer* was decided, the Appellate Division adopted a rule for measuring whether attorneys' fees are excessive in cases in which the prevailing party received less than a complete recovery. In *Cohen v. Fair Lawn Dairies, Inc.,* the court stated:

> "[W]here the merit or necessity of the creditor's claim or defense is successfully challenged, courts may decline to enforce attorney's fee provisions. When contractual provisions for payment by a debtor of his creditor's attorney's fees and costs are invoked, such payment should not be enforced in the full amount of the creditor's legal expenses (even though actually incurred, and reasonable in amount) where his claims or defenses giving rise to such expenses lack substantial merit. In no event should the sum allowed be so large as to amount to an undue penalty for taking one's grievance to the courts. And if the creditor has benefitted ... by having a doubtful question of law resolved, thus reducing the area of potential future dispute, the debtor should bear only a fair portion of the burden."
>
> [86 *N.J.Super.* 206, 216–17, 206 *A.*2d 585 (App.Div.1965), *aff'd,* 44 *N.J.* 450, 210 *A.*2d 73 (1965) (quoting *Manchester Gardens, Inc. v. Great West Life Assurance Co.,* 205 *F.*2d 872, 878 (D.C.Cir.1953)).]

Thus, "if a successful [prevailing party] has achieved only limited relief in comparison to all of the relief sought, the [trial] court must determine whether the expenditure of counsel's time on the entire litigation was reasonable in relation to the actual relief obtained ... and, if not, reduce the award proportionately." *Singer, supra,* 95 *N.J.* at 500, 472 *A.*2d 138; *see also Rendine, supra,* 141 *N.J.* at 336, 661 *A.*2d 1202 (quoting *Hensley v. Eckerhart,* 461 *U.S.* 424, 436, 103 *S.Ct.* 1933, 1941, 76 *L.Ed.*2d 40, 52 (1983)) (stating " '[i]f ... a [party] has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith' "). A similar standard would govern even if Illinois law were applied in this case. *See Leader v. Cullerton,* 62 *Ill.*2d 483, 343 *N.E.*2d

897, 900 (1976); *Brzozowski v. Northern Trust Co.*, 248 *Ill.App.*3d 95, 187 *Ill.Dec.* 814, 618 *N.E.*2d 405, 412 (1993).

Here, plaintiffs sought a declaratory judgment and alleged a breach of contract. The trial court found in plaintiffs' favor on thirty percent of the total claims filed by TLC in its counterclaim. Of the claims that had to be tried, the trial court rejected $75,498 and found that only $54,432 had been established. That meant that approximately fifty-eight percent of the claims TLC tried ($75,498 plus $54,432 equals $129,930 in total claims tried) were rejected. Yet, the attorneys were awarded 100% of the fees sought based on pretrial services and services rendered during the trial.

The trial court acknowledged that the $54,993.84 in pretrial legal fees "may be high in proportion to the amount [recovered], but the services were necessary in view of the dispute." The Appellate Division did not question the amount of attorneys' fees awarded, finding plaintiffs' objection to the amount of attorneys' fees awarded to be meritless. We disagree with the courts below and conclude that the $54,993.84 in pretrial fees and the $52,560.26 in attorneys' fees for the trial are both excessive and therefore unreasonable.

Despite the trial court's statement that the fees were necessary in light of the services rendered, nothing in the record indicates that plaintiffs filed their complaint or litigated in bad faith. *See Cohen, supra,* 86 *N.J.Super.* at 216–17, 206 *A.*2d 585 (implying that an award of attorneys' fees may be reduced if the party seeking attorneys' fees litigated in bad faith); *Specialized Med. Sys., Inc. v. Lemmerling,* 252 *N.J.Super.* 180, 186–87, 599 *A.*2d 578 (App.Div.1991) (same). Moreover, the $75,498.05 credit plaintiffs received after the trial is not an insignificant amount in comparison to an award to TLC for over-due charges of $154,-432.10. Viewed in that context, TLC prevailed on about fifty-one percent of its claims. Although we do not establish a *per se* requirement that there be a close relationship between recovery and fees awarded for services rendered, we believe that when a

substantial portion of a claim sought is ultimately rejected, that circumstance should be considered along with other factors, including those contained in *RPC* 1.5(a),[1] to determine a reasonable award of attorneys' fees. Thus, we modify the Appellate Division's judgment and remand the matter to the Law Division to determine reasonable attorneys' fees. The present award of $107,554.10 must be substantially reduced.

## V

### -A-

Plaintiffs argue that although the leases called for an eighteen percent annual interest rate for late rental payments, they should not be required to pay such a high rate of prejudgment interest on the award during the thirteen months the trial court reserved decision following the completion of the trial. When the contract rate is applied to the $54,432 awarded TLC, the interest for the thirteen months amounts to $10,620. TLC contends that it should not be deprived of that amount of contractual prejudgment interest because it had no control over the lapse of time between the end of the trial and the date the trial court rendered its decision.

The "equitable purpose of prejudgment interest is to compensate a party for lost earnings on a sum of money to which

---

[1] *RPC* 1.5(a) provides:

A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

it was entitled, but which has been retained by another." *Sulcov v. 2100 Linwood Owners, Inc.,* 303 *N.J.Super.* 13, 39, 696 *A.*2d 31 (App.Div.), *certif. granted,* 152 *N.J.* 10, 702 *A.*2d 349 (1997); *see also,* Pressler, *Current N.J. Court Rules,* comment 8 on *R.* 4:42–11 ("[P]rejudgment interest is not a penalty but rather its allowance simply recognizes that until the judgment is entered and paid, the defendant has had the use of money rightfully the plaintiff's.").

Although this is not a tort case, *Rule* 4:42–11(b) permits a court in a tort action to suspend the payment of usual prejudgment interest in "exceptional cases." That exception, however, should be used sparingly. *Osborne v. O'Reilly,* 267 *N.J.Super.* 329, 334, 631 *A.*2d 577 (Law Div.1993). We conclude that the same rule should apply to a contract case. Here, the usual rate would be the eighteen percent annual interest rate fixed by contract. The exceptional circumstance is the thirteen-month judicial delay that was not caused by the parties or their attorneys. That delay was contrary to the administrative practice requiring reserved decisions to be completed within sixty days. Under the special circumstances presented, the contractual rate of interest is suspended for the thirteen-month period. During that time, TLC is entitled to interest in accordance with equitable principles. *Manning Eng'g, Inc. v. Hudson County Park Comm'n.,* 71 *N.J.* 145, 159, 364 *A.*2d 1 (1976); *Bak–A–Lum Corp. v. Alcoa Bldg. Prod.,* 69 *N.J.* 123, 131, 351 *A.*2d 349 (1976); *Trico Mortgage Co. v. Penn Title Ins. Co.,* 281 *N.J.Super.* 341, 354, 657 *A.*2d 890 (App.Div.), *certif. denied,* 142 *N.J.* 456, 663 *A.*2d 1363 (1995).

-B-

Plaintiffs also contend that no prejudgment interest should be awarded on the attorneys' fees. The Appellate Division properly found that there is no contractual basis for prejudgment interest on the attorneys' fees. It nonetheless remanded the matter to the trial court "to recompute the pre-judgment [sic] interest, if any, which may be due and owing on such award of

attorney's fees. *See R.* 4:42–11(a)." We conclude "that an award of prejudgment interest on attorneys' fees was inappropriate and without legal or logical foundation." *Maynard v. Mine Hill Tp.,* 244 *N.J.Super.* 298, 300, 582 *A.*2d 315 (App.Div.1990). Absent a controlling contractual provision, permitting prejudgment interest on attorneys' fees would be contrary to our strong public policy disfavoring shifting of attorneys' fees. *Rule* 4:42–11(a) is limited to *post-judgment* interest in tort actions. *Rule* 4:42–11(b) permits limited prejudgment interest in tort actions. This is not a case in which the incurring of reasonable attorneys' fees is a traditional element of damages in the specific cause of action such as occurs in a civil malicious prosecution or abuse of process case. *Penwag Property Co. v. Landau,* 76 *N.J.* 595, 598, 388 *A.*2d 1265 (1978). Moreover, an attorney should not be entitled to prejudgment interest on an unliquidated demand for attorneys' fees. Consequently, absent any equitable basis to warrant prejudgment interest, no prejudgment interest on reasonable attorneys' fees is authorized in this case. The same result would be reached under Illinois law. *See Prior Plumbing and Heating Co. v. Hagins,* 258 *Ill.App.*3d 683, 197 *Ill.Dec.* 84, 630 *N.E.*2d 1208, 1212 (1994).

## VI

As modified by this opinion, the judgment of the Appellate Division is affirmed. The matter is remanded to the Law Division to determine reasonable attorneys' fees and to fix an equitable amount of prejudgment interest on the $54,432 awarded TLC on its counterclaim for the thirteen months of judicial delay. Except for those thirteen months, TLC is entitled to prejudgment interest at the contract rate. No prejudgment interest is permitted on the reasonable attorneys' fees.

*For modification; affirmance and remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.