

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-2008

# PMC Film Canada Inc v. Shintech Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5011

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"PMC Film Canada Inc v. Shintech Inc" (2008). *2008 Decisions.* Paper 1571.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1571

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-5011
_____

PMC FILM CANADA, INC.,
                                        Appellant

v.

SHINTECH, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 04-cv-05150)
District Judge:  The Honorable Freda L. Wolfson
_____

Argued:  January 17, 2008
_____

Before: SCIRICA, Chief Judge, BARRY and ROTH, Circuit Judges

(Opinion Filed:   February 20, 2008)
_____

Francis J. Sullivan, Esq. (Argued)
Jeffrey G. DiAmico, Esq.
Hill Wallack, Esq.
777 Township Line Road
Suite 250
Yardley, PA   19067

Counsel for Appellant

T. Michael Wall, Esq. (Argued)
Gardere Wynne Sewell
1000 Louisiana, Suite 3400
Houston, TX 77002
      -AND-
Christopher M. DiMuro, Esq.
Patton Boggs
One Riverfront Plaza
6th Floor
Newark, NJ 07102

Counsel for Appellee

———

OPINION

———

BARRY, Circuit Judge

This is a breach-of-contract action in which PMC Film Canada Inc. ("PMC") seeks reversal of an order of the District Court granting the motion for summary judgment of Shintech Inc. ("Shintech") and denying PMC's cross-motion for summary judgment.[1]

The parties entered into a contract in September 2003 (the "Agreement") for a period beginning (retroactively) on July 1, 2003 and ending on December 31, 2005. Under the Agreement, Shintech promised to sell to PMC certain amounts of polyvinyl chloride resin ("PVC resin"), a raw material used by PMC to create PVC film, a type of

---

[1] The amended complaint contained two counts alleging Shintech's breach of the parties' contract for two different time periods. Count I was settled and then dismissed with prejudice in an order dated October 10, 2006. Count II is thus the only remaining claim.

film used to package retail products. Section 4 of the Agreement—the "Price"

provision—tied the monthly cost of the resin to an industry index, the Chemical Data

Index ("CDI"), that prices PVC resin in a monthly publication created by Chemical Data,

Inc. The pertinent language of that provision, the critical provision before us, states:

> The price for hopper truck shipments will be equal to CDI minus US$0.1675 (16.75 cents) per pound for the month. For purposes hereof, "CDI" means the final monthly contract price for general purpose grade suspension PVC resin listed as "Large Buyer Contract Price" in the table for PVC of *Monthly Petrochemical and Plastics Analysis* published by Chemical Data, Inc., regardless of what may be written in the text of the publication. . . . If such publication ceases, or if Chemical Data Inc. makes adjustments to its published contract price for reasons not specific to changes in the market price of PVC resin for the month, or otherwise alters its methodology in any material manner, the parties will negotiate an appropriate adjustment to the pricing mechanism or a suitable replacement pricing mechanism, which, in either case, is consistent with CDI as of the date hereof. Without limiting the foregoing, the non-market change of $0.08 (8 cents) per pound adjustment to CDI in January 2004 due to a change in methodology by Chemical Data Inc. as announced in June 2003, will not affect the Price. . . .

(J.A. 1336.)[2] The parties agree that the last sentence of this excerpt was included because

the CDI had publicly stated that it might make an 8-cent, non-market adjustment (i.e., a

discretionary adjustment not caused by market conditions) in January 2004.

Between September and December 2003, Shintech charged PMC at the published

---

[2] The Agreement also contained a merger clause, which stated that the Agreement, along with its Terms and Conditions (an attachment incorporated into the Agreement by reference), constituted the parties' entire agreement, and superseded any prior agreements, whether written or oral, with respect to the same subject matter. It further states that the Agreement may only be modified if the parties specifically agree to do so in writing. (J.A. 1338.)

CDI rate minus 16.75 cents for each pound of PVC resin. In January 2004, the anticipated 8-cent, non-market based adjustment was made to the CDI, and Shintech began charging PMC the CDI rate minus 8.75 cents. PMC paid these invoices between January 2004 and August 2004 without dispute.

On August 11, 2004, PMC wrote to Shintech, claiming it just discovered that it had been paying the CDI rate minus 8.75 cents per month, and that it had done so in error because section 4 clearly stated that the January 2004 non-market adjustment was not to affect the price of the resin. Shintech disagreed. On October 21, 2004, PMC brought this action and, following discovery, the parties filed cross-motions for summary judgment.

Shintech argued in its motion for summary judgment that section 4 unambiguously reflected the parties' intention that the January 2004 adjustment would have a neutral effect on the price of the resin; in other words, "if PVC was sold at $0.42 before the non-market adjustment, the price is still $0.42 after the CDI adjustment (i.e., the parties would adjust the pricing mechanism so that the contract price would not change)." (J.A. 153-62.) PMC argued in its cross-motion that section 4 was indeed unambiguous, but that the lack of ambiguity led to only one reasonable interpretation—that regardless of what happened in January 2004, PMC would always pay 16.75 cents less per pound than whatever the CDI rate was in any given month. The District Court agreed with Shintech's proposed interpretation of section 4 and, by order dated November 30, 2006, granted its motion for summary judgment and denied PMC's cross-motion. PMC timely

4

appealed.

We have jurisdiction under 28 U.S.C. § 1291, and review the District Court's grant of summary judgment de novo, applying the same standards the District Court should have applied. *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). After reviewing the record and hearing the arguments of the parties, we will vacate the order of the District Court and remand with directions to enter judgment on behalf of PMC.

In a diversity action, we must apply the substantive law of the state in which the forum is located, including that state's choice-of-law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). With certain exceptions not relevant here, New Jersey courts will enforce a contract's governing-law clause if it does not violate New Jersey's public policy. *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 847-48 (N.J. 1999). Section 12 of the Agreement's "General Terms and Conditions" states that the Agreement "shall be governed by the laws of the state of Texas, including without limitation the Texas Business and Commerce Code (Uniform Commercial Code)." (J.A. 1338.) The District Court correctly determined that enforcement of the Agreement's governing-law clause does not violate New Jersey's public policy. Consequently, Texas law will be applied.

Under Texas law, "the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). In its attempt to reach this objective, the court should take into

5

account the entire writing such that all of its provisions are given effect, and none are rendered meaningless. *Id.* "If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and it can be construed as a matter of law." *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996).

We need not set forth more than these basic legal principles because we find that section 4 unambiguously evinces only one reasonable meaning, namely, PMC's. The Agreement's first sentence unambiguously states the price: PMC will pay for the resin at a monthly rate per pound of CDI minus 16.75 cents. The subsequent sentences call for the parties to essentially renegotiate an adjustment to the "pricing mechanism" or a replacement "pricing mechanism" if CDI adjusts its published price "for reasons not specific to changes in the market price of PVC resin," i.e., a non-market adjustment. Whether the "pricing mechanism" is adjusted or replaced, the resulting mechanism shall be "consistent with CDI as of the date hereof." Had the parties stopped there, it would seem that CDI's decision to make a non-market adjustment in January 2004 would have triggered the parties' obligation to renegotiate an adjustment to, or a replacement of, the pricing mechanism.

The parties, of course, did not stop there and instead explicitly addressed in the final relevant sentence of section 4 the effect of the then-anticipated January 2004 adjustment. They agreed that, "[w]ithout limiting the foregoing, the non-market change

6

of $0.08 (8 cents) per pound adjustment to CDI in January 2004 due to a change in methodology by Chemical Data Inc. as announced in June 2003, will not affect the Price." The price, unambiguously stated in the first sentence, is CDI minus 16.75 cents per month regardless of what the CDI figure is in any given month.[3]  PMC's reading of section 4 is the only plausible reading.

We will vacate the November 30, 2006 order of the District Court and remand this matter to the District Court with instructions to enter judgment in favor of PMC.

------

[3]  Under Shintech's interpretation, the discount would drop to 8.75 cents from 16.75 cents to compensate for the 8-cent adjustment.  Not only is the 8.75 figure not mentioned in section 4, but if, as the District Court stated, the 8-cent adjustment was to have a neutral effect on the price, the price as defined in the first sentence of section 4 would remain CDI minus 16.75 cents.