**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0240-17T3

G.B.[1],

     Plaintiff-Appellant,

v.

CHRISTINE N. ROSSI, ESQ.,
individually, and CHRISTINE
N. ROSSI, LLC,

     Defendants-Respondents.

_____

        Argued December 5, 2018 – Decided December 17, 2018

        Before Judges Alvarez and Mawla.

        On appeal from Superior Court of New Jersey, Law
        Division, Ocean County, Docket No. L-2841-15.

        Fred J. Gelb argued the cause for appellant.

        John L. Slimm argued the cause for respondents
        (Marshall, Dennehey, Warner, Coleman, & Goggin,
        attorneys; John L. Slimm and Jeremy J. Zacharias, on
        the brief).

---

[1] We utilize plaintiff's initials because this opinion addresses a related domestic violence matter. R. 1:38-3(d)(10).

PER CURIAM

Plaintiff G.B. appeals from an August 4, 2017 order granting defendants summary judgment dismissal of plaintiff's legal malpractice action. We affirm.

The following facts are taken from the motion record. In July 2013, plaintiff contacted defendant Christine N. Rossi regarding a potential representation in a divorce proceeding. During their conversation, which lasted approximately one hour, plaintiff disclosed her marital history to defendant, including information regarding her finances, alcohol and drug use, as well as verbal and physical arguments with J.B., her then-husband. Plaintiff could not afford defendant's services.

A different attorney represented plaintiff in the divorce. J.B. attempted to retain defendant to represent him in the divorce proceeding and defendant asked plaintiff's divorce counsel whether plaintiff would waive the conflict. Plaintiff refused, and J.B. hired someone else.

In October 2013, J.B. obtained a temporary restraining order (TRO) against plaintiff pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to - 35. J.B. alleged plaintiff came home intoxicated, sat on the couch where he was sleeping, lit two cigarettes, and ignited the blanket he was using. J.B.'s domestic violence complaint also alleged a prior history of domestic

violence during which plaintiff pulled a gun on J.B., as well as a separate incident of assault.

When the parties appeared for the domestic violence trial, plaintiff was self-represented and defendant appeared on behalf of J.B. Plaintiff sought to disqualify defendant. Plaintiff explained she had disclosed the "whole marriage and everything" to defendant when she had initially consulted with her, including domestic violence issues. Defendant responded that the initial consultation did not relate to the domestic violence matter because it was not pending at the time, and any information relating to domestic violence was incidental to routine questioning during the initial consultation.

The trial judge declined to disqualify defendant, and after trial issued a final restraining order (FRO) against plaintiff. Plaintiff appealed from the decision, and we reversed and remanded for a new trial. J.B. v. G.F.B., No. A-1802-13 (App. Div. Nov. 13, 2014) (slip op. 11). We concluded RPC 1.9(a) mandated defendant's disqualification because "a domestic violence complaint filed during the pendency of a divorce case is not 'unrelated' litigation." Id. at 9, 10.

The divorce proceeding was settled and the parties signed a property settlement agreement (PSA) in January 2015. Pursuant to the PSA, plaintiff

A-0240-17T3

received $400 per week in alimony. The parties valued J.B.'s interest in his company at $42,000; plaintiff received an equitable distribution of $19,500 payable at $400 per week. The PSA acknowledged the arms-length nature of the settlement, namely, each party had received discovery, voluntarily entered into the agreement, which both considered to be fair, and had been represented by independent counsel who had explained the agreement to them. The parties appeared for an uncontested divorce hearing and confirmed to the satisfaction of the judge they accepted the terms of the PSA and wished to be bound by it. The re-trial of the domestic violence matter following our remand did not occur because J.B. dismissed the TRO the day after he and plaintiff were divorced.

Plaintiff filed her malpractice complaint against defendant in October 2015. She alleged defendant's representation of J.B. in the domestic violence matter constituted a breach of the attorney-client privilege because defendant had confidential information she could have used against plaintiff in the domestic violence trial. Plaintiff alleged she had suffered damages as a result of defendant's negligence because she was homeless, excluded from her family, and suffered emotional distress. Defendant filed a motion for summary judgment, arguing plaintiff had not demonstrated negligence due to a lack of proximate cause between defendant's representation in the domestic violence

matter and the alleged harms she suffered in the divorce matter. Defendant also argued plaintiff had not proven her emotional distress damages. The motion judge granted defendant summary judgment and dismissed plaintiff's complaint with prejudice. This appeal followed.

## I.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). The court considers all of the evidence submitted "in the light most favorable to the non-moving party," and determines if the moving party is entitled to summary judgment as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). The court may not weigh the evidence and determine the truth of the matter. Ibid. If the evidence presented "show[s] that there is no real material issue, then summary judgment should be granted." Walker v. Atl. Chrysler Plymouth, Inc., 216 N.J. Super. 255, 258 (App. Div. 1987) (citing Judson v. Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 75 (1954)). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome [summary judgment]." Puder v. Buechel, 183 N.J. 428, 440-41 (2005).

A-0240-17T3

On appeal, plaintiff argues the following points: (1) defendant used privileged information obtained from the initial consultation to secure an FRO against plaintiff in the domestic violence matter and give J.B. a tactical advantage in the divorce; (2) the subsequent settlement of the matrimonial matter did not extinguish her claims against defendant; (3) her claim for intentional infliction of emotional distress should not have been dismissed for lack of medical proofs; and (4) the motion judge erred in finding she waived her claim to an award of counsel fees from defendant as a result of the successful domestic violence appeal because defendant was not a party to that appeal.

II.

"[A] legal malpractice action has three essential elements: '(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff.'" Jerista v. Murray, 185 N.J. 175, 190-91 (2005) (quoting McGrogan v. Till, 167 N.J. 414, 425 (2001)). "The burden is on the client to show what injuries were suffered as a proximate consequence of the attorney's breach of duty." 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 487-88 (App. Div. 1994). "That burden must be sustained by a preponderance of the competent, credible

A-0240-17T3

evidence and is not satisfied by mere 'conjecture, surmise or suspicion.'" Id. at 488 (quoting Long v. Landy, 35 N.J. 44, 54 (1961)). Additionally, "the assertion that an attorney has violated one of [the Court's] ethical rules does not give rise to a cause of action, although the evidence may be relevant for another purpose." Green v. Morgan Props., 215 N.J. 431, 458 (2013).

At the outset, we reject the argument advanced by defendant that plaintiff's resolution of the matrimonial dispute barred her from proceeding with a malpractice action. In Ziegelheim v. Apollo, 128 N.J. 250, 265 (1992), the Supreme Court held a client who affirmed on the record that the divorce agreement was fair and equitable, and later sued her former lawyer, was not barred from proceeding with the malpractice matter. The Court reasoned the "fact that a party received a settlement that was 'fair and equitable' does not mean necessarily that the party's attorney was competent or that the party would not have received a more favorable settlement had the party's incompetent attorney been competent." Ibid. Although this case does not involve an allegation of malpractice on account of advice rendered in the settlement of a lawsuit, the fundamental principle articulated in Ziegelheim, that a settlement does not preclude a later claim for malpractice, applies.

7

Notwithstanding, this case turns on different considerations, specifically plaintiff's failure to establish causation and damages. Plaintiff argues she revealed the following facts to defendant, which she claims were then utilized to her disadvantage in the domestic violence proceeding, namely:

> the parties['] finances, the separate bank account she had, their alcohol and cigarette purchases, alcohol consumption and smoking habits, [J.B.'s] use of marijuana . . ., [J.B.'s] use of prescription drugs, prior domestic violence committed by [J.B.], a prior incident at [a bar] in Toms River where she did not feel capable of driving home after drinking alcoholic beverages there. . . . She discussed [an] . . . incident occurring in April 2012[,] wherein she attempted to put a hand gun in the trash as she did not want one in the house as her mother had committed suicide and when [J.B.] went to grab the gun from her she pushed him and in doing so [J.B.] got scratched.

We are not persuaded this information affected the outcome of the domestic violence matter. The evidence adduced at the FRO hearing included the testimony of two Brick Township police officers. One officer testified to a prior incident where plaintiff was intoxicated, and the other to an incident where she was intoxicated and assaulted a police officer. J.B. also testified regarding the predicate act of domestic violence leading him to apply for a TRO, as well as prior incidents of domestic violence, including one in 2012, involving a gun. Plaintiff has not demonstrated this information was derived from her initial

consultation with defendant or that defendant could only have obtained this information through plaintiff. It is evident J.B. had independent knowledge of these incidents and brought them to defendant's attention to enable her to prosecute the domestic violence matter.

Plaintiff claims she was disadvantaged in the divorce action because certain business records and a recording on her cellular telephone, which contained evidence regarding the valuation of J.B.'s interest in his company, were located inside the former marital residence, which she could not access because of the existing restraining order. As with the evidence adduced during the domestic violence trial, plaintiff demonstrated no causal link between her initial consultation with defendant, and the entry of the TRO, the FRO, or inability to access the residence. No evidence exists of any special knowledge acquired by defendant causing the trial court to grant either the TRO or FRO. Moreover, as a practical matter, the TRO granted plaintiff access to the former marital residence to collect her belongings. Notwithstanding, she does not explain why she did not obtain the business records and her cellular telephone, at the time or in discovery.

Plaintiff challenges the motion judge's dismissal of her intentional infliction of emotional distress claim against defendant because she failed to

adduce medical evidence of her damages. She also argues the judge erred by precluding her from claiming as damages the legal fees and the costs of the domestic violence appeal.

As a general proposition, "emotional distress damages should not be awarded in legal malpractice cases at least in the absence of egregious or extraordinary circumstances." Gautam v. De Luca, 215 N.J. Super. 388, 399 (App. Div. 1987). "Even if emotional distress damages were recoverable in legal malpractice actions, such awards would be impermissible in the absence of medical evidence establishing substantial bodily injury or severe and demonstrable psychiatric sequelae proximately caused by the tortfeasor's misconduct." Ibid. "Aggravation, annoyance and frustration, however real and justified, constitute unfortunate products of daily living. Damages for idiosyncratic psychiatric reactions should not be permitted." Id. at 400 (citing Caputzal v. Lindsay Co., 48 N.J. 69, 76 (1966)).

"[A] negligent attorney is responsible for the reasonable legal expenses and attorney fees incurred by a former client in prosecuting the legal malpractice action." Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 444 (2001) (quoting Saffer v. Willoughby, 143 N.J. 256, 272 (1996)). A legal malpractice

plaintiff may also seek attorney fees "so long as the claimant proves that the attorney's breach arose from the attorney-client relationship." Id. at 443.

The threshold issue "is whether the party seeking the fee prevailed in the litigation." Id. at 444 (quoting N. Bergen Rex Transp., Inc. v. Trailer Leasing, Co., 158 N.J. 561, 570 (1999)). Under the two prong test established by the Court, "[t]he first prong requires that the litigant seeking fees establish that the 'lawsuit was causally related to securing the relief obtained; a fee award is justified if [the party's] efforts are a "necessary and important" factor in obtaining relief.'" Ibid. (alteration in original) (quoting N. Bergen Rex Transp., 158 N.J. at 570). "The second prong involves a factual and legal determination, requiring the party seeking fees to prove that 'the relief granted has some basis in law.'" Ibid. (quoting N. Bergen Rex Transp., 158 N.J. at 571).

The circumstances of this case, as we have noted them, fall short of the requisite egregious or extraordinary conduct necessary for plaintiff's intentional infliction of emotional distress claim to proceed without objective medical evidence of her damages. Finally, plaintiff had no cause for a claim of counsel fees against defendant as a form of damages, as she did not seek those fees for successfully prosecuting the appeal of the FRO. Even if she had sought fees and was denied, she could not claim them as a form of damages here where she did

not sustain her burden to establish causation to survive summary judgment in defendant's favor.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0240-17T3