**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

LASZLO HALASZI,                                )
                                               )
            Plaintiff,                         )
                                               )
      v.                                       )      C.A. No. K19C-07-020 NEP
                                               )
WAL-MART STORES EAST LP,                       )
                                               )
            Defendant.                         )

**ORDER**

Submitted: February 24, 2023
Decided: April 13, 2023

*Upon Plaintiff's Motion for Costs and Interest*
**GRANTED IN PART and DENIED IN PART**

**INTRODUCTION**

1.      On January 26, 2023, Plaintiff Laszlo Halaszi (hereinafter "Plaintiff") obtained a jury verdict in his favor against Defendant Wal-Mart Stores East LP (hereinafter "Defendant") in the amount of $244,842.87.[1]  Plaintiff filed a motion for costs and interest on January 31, 2023.[2]  Defendant filed a response on February 8, 2023,[3] and Plaintiff filed a reply on February 10, 2023.[4]

---

[1] Trial Worksheet (D.I. 54) at 1.

[2] Pl.'s Mot. for Costs and Interest (D.I. 56) [hereinafter "Pl.'s Mot."].

[3] Def.'s Resp. to Pl.'s Mot. for Costs and Interest (D.I. 57) [hereinafter "Def.'s Resp."].

[4] Pl.'s Reply in Support of Pl.'s Mot. for Costs and Interest (D.I. 58) [hereinafter "Pl.'s Reply"]. On February 16, 2023, the Court sent a letter explaining that it would allow Defendant to submit a sur-reply if it so chose.  D.I. 59.  Defendant responded with a letter to the Court on February 24, 2023, indicating that it would not be submitting a sur-reply.  D.I. 60.

1

2.     Plaintiff seeks to recover costs and prejudgment interest pursuant to Superior Court Civil Rule 54(d) and 6 *Del. C.* § 2301(d).   Specifically, Plaintiff requests $86,619.03 in prejudgment interest[5] and the following costs:

(a) $778.25 in electronic service and filing fees;

(b) $150.00 for the trial fee to the Prothonotary;

(c) $4,500.00 for the expert witness fee for the video trial deposition of Steven M. Dellose, M.D.;[6]

(d) $1,373.85 for video processing and interactive deposition fees; and

(e) $2,125.00 for creating and editing of custom visual aids.[7]

3.     Defendant opposes the motion only in part, arguing that (1) Dr. Dellose's video deposition fee is excessive for a one hour and twenty-eight minute deposition, and should be no more than $2,500; (2) the costs for creating an "interactive deposition" are excessive; and (3) the prejudgment interest award should be reduced in light of trial delays caused by the COVID-19 pandemic and the ensuing declaration of judicial emergency, which prevented jury trials from going forward for a period of 13 months.[8]

## DISCUSSION

### I.     Costs

4.     The prevailing party in a civil action is generally entitled to an award of costs,[9] subject to the discretion of the trial court.[10]  These costs may include expert

---

[5] Pl.'s Mot. at 4.

[6] Plaintiff originally sought a $5,250 expert witness fee but reduced that figure to $4,500 in his reply, conceding that the higher figure was not adequately documented by an invoice from Dr. Dellose's office. *See* Pl.'s Reply ¶ 1.  As noted *supra*, Defendant declined to submit a sur-reply, and Defendant did not otherwise dispute the adequacy of the documentation submitted in support of the $4,500 expert witness fee.

[7] Pl.'s Mot. at 2.

[8] Def.'s Resp. at 3–6.

[9] 10 *Del. C.* § 5101; Super. Ct. Civ. R. 54(d).

[10] *See Bishop v. Progressive Direct Ins. Co.*, 2019 WL 2009331, at *1 (Del. Super. May 3, 2019)

witness fees and production costs for video depositions of those experts, so long as the video deposition is introduced into evidence at trial.[11]

### a. Expert Fee for Video Deposition

5.      In light of Defendant's Response and Plaintiff's reply, it appears that Dr. Dellose billed Plaintiff $4,500 for an 88-minute video deposition that was subsequently played at trial.[12] Defendant argues that this fee is excessive and that a reasonable fee would be no more than $2,500.[13]

6.      10 *Del. C.* § 8906 provides that "[t]he fees for witnesses testifying as experts or in the capacity of professionals in cases in the Superior Court . . . shall be fixed by the Court in its discretion . . . ." While there is no "fixed formula" to determine reasonable fees, the Court often looks to the published guidance of the Medico-Legal Affairs Committee of the Medical Society of Delaware (hereinafter the "Committee").[14] The most recent guidelines from the Committee, approved in 2016, recommend a fee range of $2,400 to $4,000 per half day of "Deposition &

---

("Generally speaking, the decision to award costs is left to the discretion of the trial court."); *Enrique v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2636845, at *1 (Del. Super. June 30, 2010) (same), *aff'd*, 16 A.3d 938 (Del. 2011) (TABLE).

[11] Super. Ct. Civ. R. 54(g)–(h); 10 *Del. C.* § 8906.

[12] Plaintiff's motion describes the deposition as having lasted "approximately 123 minutes." Pl.'s Mot. at 2. Defendant's response, however, states that it lasted one hour and twenty-eight minutes (i.e., 88 minutes) and includes transcript excerpts showing that the deposition began at 5:17 p.m. and concluded at 6:45 p.m. Def.'s Resp. at 3 and Ex. A. In his reply, Plaintiff did not dispute that the deposition lasted only 88 minutes.

[13] Def.'s Resp. at 3.

[14] *Bishop*, 2019 WL 2009331, at *2–3; *see also, e.g.*, *Ambrosio v. Drummond*, 2017 WL 2544603, at *2 (Del. Super. June 12, 2017); *Henry v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 4271205, at *5 (Del. Super. Sept. 25, 2017); *Enrique*, 2010 WL 2636845, at *1.

Court Appearance."[15]  Adjusted for inflation, this range becomes approximately $3,000 to $5,000.[16]

7.     Dr. Dellose charged a $4,500 hourly fee for his video deposition appearance.[17]  The Court finds this rate excessive for an after-hours video deposition lasting considerably less than a half a day.[18]  The deposition was conducted outside of business hours in the comfort of Dr. Dellose's office.  Unlike an expert testifying live at trial, he did not spend any time waiting to testify or experience a half-day interruption in his office schedule.[19]  Taking into account Dr. Dellose's qualifications and extensive experience with knee replacement surgeries, but also that the deposition lasted just under an hour and a half, the Court concludes that an adjusted fee of $2,750 is reasonable in this case.[20]

---

[15]*Guidelines for Medical Expert Fees*, Medical Society of Delaware, Medico-Legal Affairs Committee (Sept. 8, 2016), https://www.medicalsocietyofdelaware.org/DELAWARE/assets/files/Manuals/Resources/Expert%20Fees%20final%202016.pdf; *see also Permint v. Kia Motors Am., Inc.*, 2022 WL 2443009, at *3 (Del. Super. June 23, 2022) ("In 2016, the Medico guidelines provided a half-day court appearance ranged from $2400 to $4000.").  In addition to case law, the Court independently takes judicial notice of the updated guidelines directly from the Medical Society of Delaware's official website, a source "whose accuracy cannot reasonably be questioned."  D.R.E. 201(b)(2).

[16] Following the approach used in *Bishop v. Progressive Direct Ins. Company*, the Court used the United States Department of Labor, Bureau of Labor Statistics Consumer Price Index calculator, *see* 2019 WL 2009331, at *3 n.18, available online at https://www.bls.gov/data/inflation_calculator.htm (last accessed April 10, 2023).  The Court entered $2,400 and $4,000 and compared September 2016 (the date the Committee guidelines were approved) to January 2023 (the date of the deposition and trial), resulting in figures of $2,974.00 and $4,956.67, respectively.

[17] Pl.'s Reply Ex. 1.

[18] *See Ambrosio*, 2017 WL 2544603, at *2 (finding a $3,000 fee excessive for 43 minutes of expert testimony and travel time).

[19] *See Permint*, 2022 WL 2443009, at *3 (noting the time spent waiting to testify in support of the reasonableness of experts' fees); *Ambrosio*, 2017 WL 2544603, at *1 ("In Delaware, '[w]hen a physician testifie[s] as an expert, for three hours or less, a minimum witness fee should be allowed ... based upon a flat amount for one-half day interruption in the physician schedule.'" (alterations in original) (quoting *Kaczmarczyk v. Liberty Mutual Fire Insu. Co.*, 2014 WL 1316192, at *1 (Del. Super. Feb. 12, 2014))

[20] *Cf. Bishop*, 2019 WL 2009331, at *3 ("With those guidelines in mind and also considering that Dr. Pilkington's testimony lasted 1 hour and 48 minutes and dealt with complex medical issues,

### b. Interactive Video Deposition

8.      As noted supra, Plaintiff seeks $1,373.85 for video processing and interactive deposition fees as well as $2,125.00 for the creation and editing of custom visual aids.  These custom visual aids were shown to Dr. Dellose during his deposition and incorporated into the video of that deposition, which was published to the jury at trial.  While there is no dispute that Plaintiff is entitled to production costs for a video deposition that was played at trial, Defendant argues that Plaintiff "is seeking costs that go far beyond the simple act of video production."[21]

9.      In support of these costs, Plaintiff relies on an unpublished letter decision of this Court in *Altschuler v. Kramer*, in which the Court awarded costs for similar use of technology and custom visual aids in an expert's video deposition.[22] The Court in *Altschuler* reasoned that:

> The Court recognizes that 21st century technology, such as computer graphics and digitized documents, are very effective tools in jury trials. Not only do they enable jurors to better understand the evidence, but they aid in the efficient and orderly presentation of that evidence.  Here, the technology utilized in the expert video depositions played at trial, and the custom visual aids created for the jury, greatly assisted the jury in understanding the medical evidence pertaining to causation and damages.[23]

The Court finds the reasoning in *Altschuler* persuasive and agrees that the interactive deposition and the custom visual aids were helpful, both to the jury and to the Court,

---

the Court finds his fee is reasonable and, thus, will award $ 2,500.00."); *Permint*, 2022 WL 2443009, at *3 ("Dr. Perlman's fee of $3,000 is reasonable considering her qualifications and experience in her nearly two-hour deposition.").

[21] Def.'s Resp. at 4.  Defendant frames this as an argument against awarding the full $1,373.85 cost for video production and does not expressly object to the costs associated with the custom visual aids, but the Court addresses both since the custom visual aids were integrated with the interactive video deposition.

[22] *Altschuler v. Cramer*, C.A. No. N12C-06-202 JRJ (Del. Super. Aug. 27, 2014) (attached to Plaintiff's motion as Exhibit C).  Plaintiff states in his reply that *Altschuler* involved "the same business entity and services used in the pending matter."  Pl.'s Reply ¶ 2.

[23] *Altschuler*, C.A. No. N12C-06-202 JRJ, at 1–2 (footnote omitted).

in understanding the expert's testimony in this case.[24]  Accordingly, the Court awards the full $1,373.85 for video processing and interactive deposition fees and $2,125.00 for the creation and editing of the custom visual aids.

## II.  Prejudgment Interest

10.  Plaintiff is entitled to an award of prejudgment interest pursuant to 6 *Del. C.* § 2301(d),[25] having extended a written settlement demand in the amount of $149,876.54 on September 8, 2022.[26]  While prejudgment interest is available as a matter of right in Delaware, the Court has discretion to reduce the recoverable amount if, *inter alia*, the plaintiff has delayed the prosecution of an action.[27]

11.  Defendant argues that "the right to pre-judgement [sic] interest should be suspended during the period of time that the Court was unable to try the case" due to the declaration of judicial emergency, which prevented jury trials from taking place between March of 2020 and July of 2021.[28]  Plaintiff responds that Defendant

---

[24] The Court is also not persuaded by Defendant's argument that, because Plaintiff could have used paper exhibits to guide the expert testimony (as Defendant's counsel opted to do), the cost of producing virtual visual aids should be likened to the costs for preparing and photocopying paper trial exhibits for a party's own use. *See Ripsom v. Beaver Blacktop, Inc.*, 1989 WL 147336, at *1 (Del. Super. Dec. 4, 1989) (concluding that the "monies spent by the plaintiff for printing and photocopying various papers and documents are not recoverable costs" because "the prints and photocopies were **made for the use of the plaintiff and his attorney and not the Court.**" (emphasis supplied)).

[25] 6 *Del. C.* § 2301(d) provides in pertinent part as follows:

> In any tort action for compensatory damages in the Superior Court . . . seeking monetary relief for bodily injuries, . . . interest shall be added to any final judgment entered for damages awarded, . . . commencing from the date of injury, provided that prior to trial the plaintiff had extended to defendant a written settlement demand valid for a minimum of 30 days in an amount less than the amount of damages upon which the judgment was entered.

The interest rate is calculated pursuant to 6 *Del. C.* § 2301(a) and is not in dispute.

[26] Pl.'s Mot. Ex. D.

[27] *See Bishop*, 2019 WL 2009331, at *5 ("If a plaintiff has delayed the prosecution of an action, the Court may, in its discretion, reduce the amount of prejudgment interest recovered."); *Permint*, 2022 WL 2443009, at *2 ("Though Delaware courts have found pre-judgment interest may be modified where the plaintiff is at fault for the delay, there is nothing to suggest that Plaintiffs delayed the prosecution of its [sic] claims here." (internal footnote omitted)).

[28] Def.'s Resp. at 5.  Plaintiff concedes that there was "an undeniable 13-month delay in the

nevertheless "maintained all of the benefit it received by retaining plaintiff's money during the 13-month delay in prosecution."[29]

12. In exercising its discretion, the Court looks to the purposes of the prejudgment interest statute. "The General Assembly enacted 6 *Del. C.* § 2301(d) to promote earlier settlement of claims by encouraging parties to make fair offers sooner, with the effect of reducing court congestion."[30] In addition, "[p]rejudgment interest serves two purposes: first, it compensates the plaintiff for the loss of the use of his or her money; and, second, it forces the defendant to relinquish any benefit that it has received by retaining the plaintiff's money in the interim."[31] Thus, "the strong public policy . . . favors providing full compensation to prevailing plaintiffs who do not contribute to the defendant's delay in paying."[32]

13. Moreover, in *Permint v. Kia Motors America, Inc.*, this Court addressed precisely the same argument advanced by Defendant here and concluded that the delay caused by the pandemic did not warrant a pause in the accrual of interest, reasoning, *inter alia*, that the pandemic did not "impede[] Defendants' opportunities to negotiate a settlement."[33] This result is consistent with Delaware case law finding that prejudgment interest need not be suspended because of delays caused by the Court's calendar.[34]

---

prosecution of this case due to Covid [sic] and not the actions of the parties . . ." Pl.'s Reply ¶ 3. The Court notes, however, that the second scheduled trial date of April 18, 2022, was extended by joint request of the parties due to Plaintiff's additional medical treatment related to his claims against Defendant. *See* D.I. 33 (letter dated December 13, 2021, requesting a new trial date on behalf of both parties).

[29] Pl.'s Reply ¶ 3.

[30] *Rapposelli v. State Farm Mut. Auto. Ins. Co.*, 988 A.2d 425, 427 (Del. 2010), *as corrected* (Feb. 5, 2010).

[31] *Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011).

[32] *Id.* at 487 (citing *Moskowitz v. Mayor and Council of Wilmington*, 391 A.2d 209, 211 (Del. 1978)).

[33] 2022 WL 2443009, at *2.

[34] *See, e.g., Bishop*, 2019 WL 2009331, at *6 (concluding that it "would be unreasonable to penalize" a plaintiff seeking prejudgment interest "for delays caused by the business and priorities

14.     In light of these considerations, the Court concludes that Plaintiff is entitled to the full amount of prejudgment interest requested.[35]

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Costs and Interest is **GRANTED IN PART and DENIED IN PART**.  Defendant shall pay **$86,619.03** in prejudgment interest, as well as total costs of **$7,177.10** itemized as follows:

(a) **$778.25** in electronic service and filing fees;

(b) **$150.00** for the trial fee to the Prothonotary;

(c) **$2,750.00** for the expert witness fee for the video trial deposition of Steven M. Dellose, M.D.;

(d) **$1,373.85** for video processing and interactive deposition fees; and

(e) **$2,125.00** for creating and editing of custom visual aids.

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

---

of this Court" after a trial was continued for scheduling reasons).

[35] The out-of-state authority relied on by Defendant would not compel a different result even if this Court were to follow it.  The Supreme Court of New Jersey has held that the *contractual rate* of prejudgment interest could be suspended where there was a "thirteen-month judicial delay that was not caused by the parties or their attorneys."  *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 851 (N.J. 1999).  That case is distinguishable for two reasons.  First, the delay in that case was caused by the trial court's having reserved decision after trial for 13 months, "contrary to the administrative practice requiring reserved decisions to be completed within sixty days."  *Id.*  Second, the prevailing party was nonetheless "entitled to interest in accordance with equitable principles" under New Jersey law, and the court simply suspended the higher contractual rate of interest with respect to the 13-month delay. *Id.*

8

*Via File & ServeXpress*
oc: Prothonotary
cc: Counsel of Record