**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1001-23

i5 TECH INC.,

    Plaintiff-Respondent,

v.

PRUDENT PARTNERS LLC,

    Defendant-Appellant.

_____

Submitted January 15, 2025 – Decided April 2, 2025

Before Judges DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-0880-22.

Robert J. Basil and Sean Collier (The Basil Law Group, PC), attorneys for appellant.

Archer & Greiner, PC, attorneys for respondent (Micheal J. Lauricella and Scott A. Sears, on the brief).

PER CURIAM

    Defendant Prudent Partners LLC (defendant or Prudent) appeals from the following Law Division orders:  the August 17, 2023 order for judgment in favor

of plaintiff i5 Tech Inc.[1] (plaintiff or i5); the October 20, 2023 order denying Prudent's motion for reconsideration and granting i5 attorneys' fees; and the October 24, 2023 final judgment in favor of i5. We affirm.

I.

Prudent and i5 provided consulting personnel, primarily in the information technology (IT) field. In 2017, i5 entered into a consulting services agreement with The Prudential Insurance Company of America (Prudential) to supply IT consultants. Under that contract, Prudential was entitled to cumulative progressive volume discounts partially offsetting the consultant fees it owed i5. Although the contract required i5 to track its total bill and apply the discount to each monthly invoice, it did not do so. When Prudential raised the issue in 2018, i5 began to prospectively apply the discounts. However, Prudential did not seek reimbursement of the unpaid amounts accrued prior to 2018, to which it was entitled under the contract terms. According to Prudent, the cumulative amount i5 owed Prudential on the discounts was $91,887.80.

Prudent was not a signatory or third-party beneficiary to the contract between i5 and Prudential. Because Prudent "introduced" i5 to Prudential,

---

[1] In early 2018, i5 merged with its predecessor, Nixsol, Inc. For purposes of this opinion, we refer to both entities as i5.

A-1001-23

Prudent and i5 entered into referral agreements whereby i5 paid Prudent an hourly "referral fee" for certain consultants placed with Prudential.

In a September 2019 email, Aashish Karanjawala, Prudent's principal, advised Harsh Bhatt, i5's director of client services, he had discussions with Prudential to change the terms of the original consulting services agreement, even though Prudent was not a party to that agreement. Karanjawala said Prudent was taking a "severe financial hit" as a result of the volume discounts, but Prudential was unwilling to renegotiate its contract with i5. Karanjawala notified Bhatt he wanted to end the partnership between Prudent and i5 and "work out feasible options." Bhatt later responded he advised Prudential that i5 would no longer be servicing its account. Both Karanjawala and Bhatt agreed i5 had a past due amount owed to Prudential from the unpaid discounts.

In a December 2019 letter agreement, Prudential acknowledged i5 had been reorganized and Prudent would be the entity providing consulting services to Prudential. The agreement stated Prudent "hereby acknowledges, confirms, covenants and agrees that as of the [e]ffective [d]ate it has assumed all the rights, obligations and liabilities of [i5] under the [prior consulting] [a]greements." The agreement, to which i5 was not a party or signatory, was signed by a Prudential representative and Karanjawala on behalf of Prudent.

A-1001-23

Within two months, i5 and Prudent formalized a new relationship through a February 11, 2020 subcontractor agreement. Under the agreement, i5 contracted to provide consultants to Prudent, which in turn placed them with Prudential. The agreement contained an indemnification clause:

> Indemnification: Each party shall defend, indemnify and hold harmless the other party against any and all losses and damages arising out of any misrepresentation or breach by the other party of any warranty, covenant or promise made or contained in this [a]greement.

The agreement also contained an amendment specifically addressing i5's liability for its unpaid discounts to Prudential: "Any past liabilities during the course of time [i5] had MSA[2] executed with [Prudential], will [remain the] responsibility [of i5] since Nixsol was merged with [i5]." In addition, the agreement designated New York law for all disputes arising out of the contract.

In accordance with the subcontractor agreement, i5 issued invoices to Prudent totaling $102,119.20 for the consultants it provided from December 2019 through March 2020. Although Prudential paid Prudent $124,951 for these services, Prudent never paid i5, despite i5's demands for payment.

---

[2] "MSA" refers to the 2017 consulting services agreement.

Instead, Prudent took the position that it was entitled to an offset of $91,887.80 based on the outstanding amount i5 owed Prudential. Prudent also claimed an offset of $20,532 based on a debt jointly owed by i5 and a company related to it, Siri InfoSolutions, Inc. (Siri).[3] With these offsets, i5 would owe Prudent $10,300.

Despite discussions to resolve the issue, the parties were unable to reconcile the amounts owed. On February 18, 2022, i5 filed a complaint against Prudent, claiming breach of contract, quantum meruit, book account balance and breach of duty of good faith and fair dealing, and seeking damages of $102,119.20, attorneys' fees and other relief. Prudent answered and asserted counterclaims for breach of contract, breach of duty of good faith and fair dealing, book account balance and unjust enrichment.

The court held a bench trial on June 27 and 29, 2023. In its August 17, 2023 written trial opinion, the court assessed the testimony of the witnesses for both parties and articulated detailed reasons why it found Karanjawala and Bhatt not credible witnesses for Prudent. The court found i5 proved its claim for

---

[3] This amount represented consultants Prudent supplied i5 and Siri, along with $4,500 relating to a consultant i5 supplied to Prudential. Although i5 and Siri were separate entities, they operated from the same location, utilized the same personnel, and some of i5's employees used Siri's email addresses. The trial court found i5 and Siri were separate entities.

breach of contract by establishing a valid contract existed between the parties, i5 performed under the contract, Prudent failed to pay under the contract, and i5 suffered damages as a result.

With regard to the offsets sought by Prudent, the court found "no legal or factual support for the proposition that any debt owed by i5 to Prudential for the time period they were in privity [became] the responsibility of Prudent." It noted there was no evidence to support any delegation by Prudential to Prudent to collect the debt, nor did any of the contracts support Prudent's position. The court was also unconvinced that, had Prudent recovered the monies i5 owed to Prudential, Prudent would have paid those funds to Prudential.

The court entered judgment in favor of i5 for $102,119.20, along with pre-judgment interest of $10,649.77 and post-judgment interest. The court also awarded attorneys' fees under the subcontractor agreement, citing Bethlehem Steel Corp. v. K.L.O. Welding Erectors, Inc., 132 N.J. Super. 496, 500 (App. Div. 1975).

i5 submitted a certification of attorneys' fees totaling $66,389.15. Although Prudent did not dispute the reasonableness of the fees, it moved for reconsideration of the portions of the order awarding i5 attorneys' fees based on the subcontractor agreement, and denying Prudent's claimed $4,500 offset to

6

damages. Prudent argued the award of attorneys' fees was not encompassed in the subcontractor agreement because it was not expressly provided for in the indemnification clause. i5 opposed the motion.

After considering arguments of counsel on October 13, 2023, the court issued an October 20, 2023 order and statement of reasons denying the motion. In rejecting Prudent's contentions, the court again cited Bethlehem Steel Corp. for its determination legal expenses were a "loss" encompassed in the indemnification clause, which was drafted by Prudent. The court also reiterated its finding that New Jersey law applied to the consideration of an award of attorneys' fees, because the issue was procedural.

The court entered a final judgment on October 24, 2023.

II.

On appeal, Prudent argues the trial court erred in failing to interpret the subcontractor agreement as allowing Prudent to offset i5's damages by its liabilities and in awarding i5's attorneys' fees by misreading the subcontractor agreement's indemnity clause. Prudent also challenges the court's striking certain trial testimony about an offset.

The issues presented raise questions of both fact and law. We apply a deferential standard in reviewing factual findings by a judge. Balducci v. Cige,

7

240 N.J. 574, 594 (2020).  We review the factual findings made by a trial judge to determine whether they are "supported by adequate, substantial and credible evidence."  Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974).  Such findings made by a judge in a bench trial "should not be disturbed unless 'they are so wholly insupportable as to result in a denial of justice.'"  Id. at 483-84 (quoting Greenfield v. Dusseault, 60 N.J. Super. 436, 444 (App. Div. 1960)).  However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We first address whether the trial court erred in awarding final judgment under the subcontractor agreement to plaintiff without offsets.

"The interpretation of a contract is subject to de novo review by an appellate court."  Kieffer v. Best Buy, 205 N.J. 213, 222 (2011).  Thus, we "pay no special deference to the trial court's interpretation and look at the contract with fresh eyes."  Id. at 223.

Consistent with the trial court's approach to the subcontractor agreement's choice-of-law provision, we apply New York law to the breach of contract claim. The elements of a breach of contract under New York law are:  (1) the existence

of a contract; (2) the plaintiff performed in accordance with the contract; (3) the defendant breached its contractual obligations; and (4) the defendant's breach resulted in damages. 34-06 73, LLC v. Seneca Ins. Co., 198 N.E.3d 1282, 1287 (N.Y. 2022).

The parties do not dispute the amount Prudent owed i5 based on the subcontractor agreement. Rather, Prudent maintains the awarded damages should be offset by the volume discount liability it assumed under the amendment to the subcontractor agreement. Prudent notes Karanjawala testified that in drafting the agreement, he knew about the liability and that i5 should be responsible for it. Prudent argues that Subba Arumilli, Siri's partner, advisor and director, admitted i5's responsibility for the liability. Prudent also contends the consulting services agreement and subcontractor agreement should be enforced according to their terms, which did not require Prudential to activate a demand for the volume discount to require repayment. And Prudent avers that even if a demand were a precondition, Prudential's 2018 request qualified as a demand.

Beginning with basic contract interpretation principles under New York law, the "fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." Greenfield v.

Philles Recs., Inc., 780 N.E.2d 166, 170 (N.Y. 2002).  "The best evidence of what parties to a written agreement intend is what they say in their writing." Ibid. (quoting Slamow v. Del Col, 594 N.E.2d 918, 919 (N.Y. 1992)). Therefore, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms."  Ibid.; see also W.W.W. Assocs. v. Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990).

As the trial court found, even if there were an ambiguity, Prudent drafted the subcontractor agreement, so the provision would be construed against it.  See 327 Realty, LLC v. Nextel of N.Y., Inc., 55 N.Y.S.3d 202, 203 (App. Div. 2017) ("To the extent there may be an ambiguity, it is properly construed against the drafter . . . .").

The trial court correctly interpreted the subcontractor agreement and its amendment.  There is no ambiguity.  Reading the contract as written, the volume discounts i5 owed to Prudential remained i5's liability.  While Prudent's contract with Prudential provided Prudent would assume i5's liabilities, the trial court found there was no evidence to support any delegation of collection by Prudential, or that Prudent would have reimbursed Prudential with the credit offset.

A-1001-23

As to Prudent's claim it was entitled to an offset, in order for monies to be due under a setoff, "mutuality requires that the debts be due to and from the same persons in the same capacity." Harnett v. Nat'l Motorcycle Plan, Inc., 399 N.Y.S.2d 242, 244 (App. Div. 1977).

Here, Arumilli testified Siri was not involved in the relationship between i5 and Prudent. The trial court found i5 and Siri were separate companies. Thus, even if i5 and Siri jointly owed a sum to Prudent, this joint debt could not offset the amount Prudent owed to i5 because the debt is not due "from the same persons in the same capacity." Ibid. Although the lines between i5 and Siri may have been blurry, we are unpersuaded the trial court abused its discretion in determining they were separate entities.

We next turn to Prudent's contention the trial court erred by striking as irrelevant testimony related to the $4,500 referral fee i5 purportedly owed Prudent when Prudential hired a particular consultant. We defer to a trial court's evidentiary ruling absent an abuse of discretion. Rowe v. Bell & Gossett Co., 239 N.J. 531, 551 (2019). Under that deferential standard, we decline to disturb that evidentiary ruling unless "there has been a clear error of judgment." Ibid. (quoting Griffin v. City of East Orange, 225 N.J. 400, 413 (2014)). "Evidentiary decisions are reviewed under the abuse of discretion standard because, from its

genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010).

"Relevant evidence is any 'evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action.'" Hrymoc v. Ethicon, Inc., 254 N.J. 446, 464 (2023) (quoting N.J.R.E. 401). "Pursuant to N.J.R.E. 402, all relevant evidence is admissible, except as otherwise provided by the Rules of Evidence or by law." Ibid.

Prudent maintains the testimony is relevant to its counterclaim of unjust enrichment and defenses of setoff and unclean hands because i5, acting on behalf of itself and Siri, caused the payments to be withheld. We disagree. The trial court found testimony regarding this fee was "not . . . relevant to the issues as they have been presented in this case, which pertain to the discounts and offsets allegedly owed to [Prudential]." Because this claim was not directly plead in Prudent's counterclaims and the court limited the testimony to the issues as plead, we discern no abuse of discretion in the exclusion of this testimony.

We next address whether the trial court erred in applying New Jersey law to the requested attorneys' fees. "Choice-of-law questions involve legal determinations, and therefore our review is de novo." Cont'l Ins. Co. v.

12

<u>Honeywell Int'l, Inc.</u>, 234 N.J. 23, 46 (2018). "Furthermore, when a civil action is brought in New Jersey, we use New Jersey choice-of-law rules to decide whether this state's or another state's legal framework should be applied." <u>Ibid.</u>

Here, the trial court determined New Jersey law applied to the issue of attorneys' fees because they "are considered procedural in nature," citing <u>Busik v. Levine</u>, 63 N.J. 351, 372-73 (1973). We agree with the court's reliance on <u>North Bergen Rex Transport, Inc. v. Trailer Leasing Co.</u>, 158 N.J. 561, 569 (1999), where, on similar facts, our Supreme Court held the "procedural law of the forum state applies even when a different state's substantive law must govern." While Prudent distinguishes the facts of this case from these cases, it cannot point to any binding New Jersey authority holding the award of attorneys' fees pursuant to a choice-of-law contract is a matter of substantive law.

Having settled the choice of law, we lastly address whether the trial court erred by awarding plaintiff attorneys' fees absent an express mention of attorneys' fees in the indemnity provision. An appellate court generally reviews the grant or denial of attorneys' fees under a clear abuse of discretion standard. <u>Packard-Bamberger & Co. v. Collier</u>, 167 N.J. 427, 443-44 (2001). However, when the issues involve contract interpretation and the application of case law

to the facts of the matter at bar, our review is de novo.  See Hutnick v. ARI Mut. Ins. Co., 391 N.J. Super. 524, 528 (App. Div. 2007).

In awarding attorneys' fees under the contract, the trial court found the indemnification clause here similar to the one in Bethlehem Steel, 132 N.J. Super. at 500.  Both contained a provision requiring indemnification of "any and all losses and damages" which given its breadth, led this court in Bethlehem Steel to "the conclusion that legal expenses would be considered a 'loss' within the contract."  Id. at 498.  Although Bethlehem Steel concerned indemnification in defending a third-party claim, the distinction is of no consequence.  We agree with the trial court's interpretation of the contract's "any and all" indemnification included reimbursement of attorneys' fees arising out of a successful action for breach of contract.[4]

---

[4]  Defendant's Rule 2:6-11(d)(1) letter argues our Supreme Court's recent opinion in Boyle v. Huff necessitates reversing the attorneys' fees award.  See 257 N.J. 468 (2024).  Unlike the contract and claim here, the indemnification provision in Boyle specifically included attorneys' fees and the issue was whether the provision applied to a first-party cause of action.  Id. at 472, 479-80.  Nevertheless, the Court held indemnification of a party for its attorneys' fees applies to "claims if that is the clear intent of the parties as expressed by their deliberate word choices when drafting contracts," id. at 482-83, as we are persuaded the parties intended here.

Because we find no error in the trial court's decision, we discern no abuse of discretion in its denial of Prudent's motion for reconsideration or the entry of final judgment for i5. <u>Branch v. Cream-O-Land Dairy</u>, 244 N.J. 557, 582 (2021).

To the extent we have not expressly addressed any remaining issues raised by Prudent, it is because they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1001-23