HUDSON & MANHATTAN RAILROAD COMPANY, A CORPORATION, PETITIONER-APPELLANT, v. BOARD OF PUBLIC UTILITY COMMISSIONERS OF THE STATE OF NEW JERSEY ET AL., DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 22, 1951—Decided November 30, 1951.

Bigelow, J. A. D., dissented.

Before Judges JACOBS, EASTWOOD and BIGELOW.

*Mr. William A. Roberts*, of the District of Columbia bar, argued the cause for the petitioner-appellant (*Messrs. Edward A. Markley* and *James J. Langan* of counsel; *Messrs. William A. Roberts, Warren Woods* and *Morton R. Galane*, all of the District of Columbia bar, on the brief; *Messrs. Markley & Broadhurst*, attorneys).

*Mr. Jacob J. Levey* argued the cause for the defendants-respondents (*Mr. Mortimer Neuman*, of counsel and on the brief; *Mr. John B. Graf*, attorney).

The opinion of the court was delivered by

EASTWOOD, J. A. D. The Hudson & Manhattan Railroad Company (hereinafter referred to as "the Railroad") appeals from the final decision of the Board of Public Utility Commissioners, Department of Public Utilities, State of New Jersey (hereinafter referred to as "the Board"), denying the Railroad's application for an increase of its intrastate fare from five cents to ten cents. The City of Jersey City (hereinafter referred to as "the City"), protested the fare increase and participated in the hearings before the Board.

The Railroad operates an interurban rapid transit electric railroad transporting passengers between points in the States of New Jersey and New York and intrastate within those states. The Railroad asserts that since 1934 it has operated its railroad at a substantial loss; that its deficit from railroad operations for 1949 was $1,986,579.06; and that its estimated deficit for 1950 is $1,423,978.75. On November 18, 1949, the Railroad filed with the Board its petition for the aforementioned fare increase—its first application for such an increase during its 40 years of ownership. On March 19,

1950, the Board scheduled a hearing for April 26, 1950, which, after ten sessions, was concluded on August 2, 1950. The Board handed down its decision on February 15, 1951. The Interstate Commerce Commission has approved an increase of the Railroad's interstate fare from ten cents to fifteen cents. and the Public Service Commission of New York has increased the intrastate fare from five cents to ten cents.

In its decision, determination and order, the Board stated, *inter alia*:

"While the record contains exhibits purporting to show the investment in the property as a whole, devoted to interstate and intrastate service, the exhibits are compiled from the books of account of the Company. No evidence in support of the book entries was introduced. We are asked to accept the entries in the books of account of the Company at face value. This we cannot do under the above quoted Decision. (*Public Service Coordinated Transport v. State*, 5 N. J. 196 (1950)). (Parenthesis ours.)

Neither evidence of the cost to reproduce the property at the time of the inquiry nor other evidence on the basis of which a 'property valuation' might be established was introduced."

The Railroad contends now, as it did consistently before the Board, that:

"The Public Service decision is definitely not applicable to the Hudson and Manhattan Railroad, which has been a deficit carrier for more than ten years. It is limited to cases where a utility asserts a need for the revenue because it wants a fair return, not to supply revenue to meet costs.

The Public Service decision was upon facts and contentions related to the reasonableness of the rate or amount of return whether equated to stock or property value (*supra*, 5 N. J. 223). The Court holds that adequate proof and finding of rate base are essential to a valid conclusion on the reasonableness of the return prior to fixing fares. In the present case, the segregated revenues and expenses applicable to the intrastate New Jersey service showed a long continued absolute loss on the forty-year old original five-cent fare. It follows that no test of rate of return is involved and hence no use exists for a current segregated rate base.

* * * * * * * *

The special deficit theory that should be applied to the Appellant is simply that a rate base need not be made out if the record by competent and adequate proof establishes the revenues, operating expenses, rentals, fixed charges such as interest costs, the reasonableness of such expenses and the failure of revenue estimated to result from the

increased fare to exceed them. The basis for the theory is obvious: With no return possible, there can be no question of the fairness of the return. Therefore, no rate base is necessary."

In its reply brief, the Railroad asserts:

"In view of the deficit under present and proposed fares, finding of a rate base is not necessary, but if required, adequate data were before the Board for the determination of a minimum rate base."

In considering the pivotal issue here, we are convinced that the *Public Service* case, *supra*, is controlling. See also *Central R. Co. of N. J. v. Dept. of Public Utilities*, 7 *N. J.* 247 (1951). That such a conclusion is warranted clearly appears in the following language of Chief Justice Vanderbilt in the *Public Service* case, *supra*:

"* * * The statutory standard prescribing the rate-making powers of the Board is to be found in *R. S.* 48:2–21 (*b*) (1) which provides that the Board may 'Fix just and reasonable individual rates * * * whenever the Board shall determine any existing rate * * * to be unjust, unreasonable, insufficient or unjustly discriminatory or preferential.' In any case in which the reasonableness of the fixed rate is challenged and the fulfillment of the statutory standard thereby subjected to judicial review, the court is duty bound to weigh the evidence and resolve for itself the issue of reasonableness.

\* \* \* \* \* \* \* \*

The justness and reasonableness of a particular rate of fare can only be determined after an examination of a company's property valuation which constitutes its rate base; its expenses, including income taxes and an allowance for depreciation; and the rate of return developed by relating its income to the rate base.

\* \* \* \* \* \* \* \*

The determination of an adequate rate base is, as the term applies, fundamental in any rate proceeding. The rate base is the fair value of the property of the public utility that is used and useful in the public service."

But, the Railroad argues, there was "adequate data * * * before the Board for the determination of a minimum rate base." The City contends that the only proof adduced by the Railroad were its books of account and records; that it failed to introduce evidence in support thereof in conformity with the holding of the *Public Service* case, *supra*, to wit:

"The dangers inherent in accepting the books of account at face value in a rate proceeding are apparent. The prescription of a uniform system of accounts by regulatory commissions, such as the Board of Public Utility Commissioners, has been uniformly accompanied by the qualification that in prescribing the system of accounts, the commissioners do not commit themselves to the approval or acceptance of any item set out in any account for the purpose of fixing rates or in determining other matters before the commission.

Neither this Court nor the Board can accept the books of account of a public utility at face value in a rate case in which reasonableness is always the primary issue.

 \* \* \* \* \* \* \*

\* \* \* There must be proof in the record not only as to the amount of the various accounts but also sufficient evidence from which the reasonableness of the accounts can be determined. Indeed, *R. S.* 48:2–21 (*d*) specifically provides that 'The burden of proof to show that the increase, change or alteration (in rates) is just and reasonable shall be upon the public utility making the same.' Lacking such evidence, any determination of rates must be considered arbitrary and unreasonable."

 "It is well recognized that rate-making is a legislative and not a judicial function, and that the Board of Public Utility Commissioners, to which the Legislature has delegated its rate-making power, is vested with broad discretion in the exercise of that authority. *O'Brien v. Board of Public Utility Commissioners,* 92 *N. J. L.* 44 (*Sup. Ct.* 1918); affirmed 92 *N. J. L.* 587 (*E. & A.* 1919); *Atlantic City Sewerage Company v. Board of Public Utility Commissioners,* 128 *N. J. L.* 359 (*Sup. Ct.* 1942); affirmed 129 *N. J. L.* 401 (*E. & A.* 1943). For the delegation of the legislative function to be valid under our Constitution it is essential that adequate standards be prescribed by the Legislature and adhered to by its agent, in this instance the Board. *Van Riper v. Traffic Telephone Workers' Federation of New Jersey,* 2 *N. J.* 335 (1949); *State Board of Milk Control v. Newark Milk Co.,* 118 *N. J. Eq.* 504 (*E. & A.* 1935)." *Public Service Coordinated Transport v. State, supra.* The Railroad contends that its objective was to obtain a rate of fare based on its "deficiency theory" and it was not seeking a fare that was intended to yield a return to the stockholders; there-

fore, the *Public Service* case was not pertinent. With that contention we are not in accord. In view of the position taken by the Railroad at the hearing and the Board's contention that the *Public Service* case was controlling, it is unfortunate that it did not insist upon the Railroad producing proof in support of its books and records so that a rate base might be established. It may well be that the Railroad is entitled to some relief. However, the determination of that question remains for the resolution of the Board. *R. S.* 48:2–47 authorizes the court, where it shall appear equitable and just, to order a rehearing before the Board "upon such terms and conditions as are reasonable," and "The board shall thereupon proceed to a rehearing on the evidence upon which the order under review was based, and upon such additional evidence, if any, as may be produced. As the result of the rehearing the board may readopt the order or alter, amend, modify or extend it." In the *Central R. Co.* case, *supra*, Mr. Justice Burling, speaking for the Supreme Court, stated:

"* * * We are now presented with the question whether upon a formal rehearing an administrative agency, vested with powers partaking of both legislative and judicial attributes, should consider the record of the original hearing as well as the evidence submitted to it during the course of the rehearing.

There is no doubt in our minds that the Board must consider the entire record, including the records of both the original hearing and the rehearing. Compare *Public Service Coordinated Transport v. State (p.* 213)*, supra.*"

For the reasons above stated, the order of the Board of February 15, 1951, is set aside and the record and proceedings are remanded for rehearing on the evidence upon which that order was based, as well as upon such additional evidence as may be introduced. The rehearing should be fixed at a reasonably early date and the issue determined as expeditiously as possible.

BIGELOW, J. A. D. (dissenting). I concur in the reversal of the order of the Board, but I cannot agree with the direc-

tion that the Board conduct a rehearing at which a rate base may be proved. The implication is that the Board should again deny relief if the Company fails again to prove the present value of its property used in the intrastate carriage of passengers. Such, I understand, is my colleagues' decision.

I surmise that everyone will agree that the Board has authority to establish or approve an individual rate, as distinguished from a comprehensive tariff or schedule of rates, without first establishing a "rate base." The Chamber of Commerce of a certain town petitions for a lower commutation sale between their town and the neighboring city. The Board has power, I assume, to grant the application if a comparison with other rates shows that the existing rate is unreasonable and the desired rate is fair. Some years ago the Public Utility Commission fixed rates for coke in carload lots from the Hackensack River at Kearny to all points in New Jersey within 50 miles. Of course, there was no valuation of the railways involved. Not only railroads but gas, electric, telephone, water—all utilities—have occasion to file new individual rates, and the Board must pass on them if objection is made. *R. S.* 48:2–21(*d*).

I submit that the present case is in essence one dealing with individual rates in which no rate base need be proved. The Hudson & Manhattan Railroad Company is a passenger carrier engaged almost exclusively in interstate business. All its tracks, facilities and equipment are employed in interstate traffic and all its trains run between New York and New Jersey. However, a few passengers enter and leave the trains while still in New Jersey—a trifle less than four per cent of total passengers in 1949. The average New Jersey intrastate ride is only half as long as the average interstate ride, so New Jersey intrastate passenger-miles are only two per cent of total passenger-miles. It is the rate for that two per cent of the Company's business that is the only subject of the present proceeding.

The Company proved that its present rate is insufficient. On any basis of allocation of expense, it costs the Company

more than the five-cent fare to carry a New Jersey passenger. Whether the Company also proved that its proposed rate was reasonable and fair should be determined in the first instance by the Board.

The Interstate Commerce Commission in 1950 approved an increase of the interstate fare from ten cents a passenger to fifteen cents and the New York intrastate rate was lifted from five cents to ten cents. The rates so established, especially that set by the Interstate Commerce Commission for 97 per cent of the Company's transportation service, must be accepted as reasonable and may be used as a yardstick for New Jersey intrastate fares. The New Jersey rate, five cents, had been half of the interstate rate. On the basis of average passenger-miles, the two rates had been the same, for the interstate passengers travel twice as far as the local passengers. Using the same ratio, our intrastate rate would now be 7½ cents. But the Company says that expense does not vary exactly with distance, and it points out practical reasons against a fare that includes odd cents.

The present five-cent fare of the Company is, perhaps, not the only five-cent transportation fare still in effect in the United States, but certainly very few remain. Its rarity or uniqueness testifies to its insufficiency.

The New Jersey fare has been five cents since the Company began operations 40 years ago. If the rate in past years has not been too high, it is too low now, because of the decline of the purchasing power of money. There are businesses in which the fall in the value of money is offset by increase in volume, and by labor-saving devices. But the Company's business, instead of gaining, has fallen off with the passing years. The practical abandonment of the Pennsylvania passenger terminal in Jersey City, the opening of the Holland Tunnel, the evergrowing competition of the automobile, have had serious effects. Nor have there been any substantial savings in labor-hours.

In my opinion, the evidence proved that the Company's present rate is too low, and afforded a basis for determining what rate would be fair.