**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0957-24

WOODROSE PROPERTIES
GOLDEN SWAN URBAN
RENEWAL LLC,

 Plaintiff-Respondent,

v.

SUBWAY REAL ESTATE, LLC,
and FRANCHISE WORLD
HEADQUARTERS, LLC,

 Defendants-Respondents,

and

HARDEV CORP. and KEYUR
PATEL,

 Defendants-Appellants.

_____

 Submitted March 3, 2026 – Decided May 7, 2026

 Before Judges DeAlmeida and Torregrossa-O'Connor.

 On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1834-21.

David M. Shafkowitz, attorney for appellants.

Fisher Zucker LLC, attorneys for respondent Subway Real Estate, LLC (Frank A. Reino and Christopher B. Alexander, on the brief).

PER CURIAM

Defendants Keyur Patel and Hardev Corp. (collectively, Patel)[1] appeal from a series of Law Division orders in this multi-party rental litigation:  a July 17, 2024 order resolving cross-motions for summary judgment against Patel and in favor of defendant Subway Real Estate, LLC (Subway); an August 30, 2024 order denying Patel's motion for reconsideration, and an October 25, 2024 order awarding counsel fees to Subway.  Final judgment required Patel to pay Subway $125,000 in damages and $174,126.37 in attorneys' fees, representing Subway's costs in settling the litigation with its landlord, Woodrose Properties Golden Swan Urban Renewal, LLC (Woodrose), following Patel's repeated failure to pay rent pursuant to Patel's sublease agreement with Subway.

Patel contends the trial court erred in granting summary judgment in favor of Subway as genuine issues of fact exist surrounding Patel's allegations of Subway's negligence and bad faith in resolving the underlying rental dispute

---

[1]  We refer to Keyur Patel and Hardev Corp. collectively as "Patel" because, at all relevant times, Keyur Patel acts both on his own behalf and on behalf of Hardev Corp. as Hardev Corp.'s "sole shareholder."

with Woodrose, alleging Subway primarily caused or failed to mitigate the damages it sought from Patel. Patel further contends the counsel fee award was improper, and, alternatively, excessive. After review of the record in light of applicable legal principles, we affirm.

I.

A. The Leases

Two leases are relevant to this dispute. The first, an April 8, 2011 Master Lease between Woodrose, as landlord, and Subway, as tenant, pertained to Subway's rental of space in Trenton from Woodrose for operation of a Subway restaurant franchise. The second, a September 13, 2013 Sublease between sublessor Subway and sublessee Patel, concerned Patel's operation of a Subway franchise in this leased space.

Relevant here, section twenty-three of the Master Lease expressly governs "default." It provides in pertinent part:

> In the event [of] Tenant's failure to perform any monetary terms or conditions of this Lease and continues for ten . . . days after Tenant's receipt of written notice thereof . . . , Landlord may declare the rights of Tenant under this Lease terminated, and thereafter, recover possession of said [p]remises through legal process. Landlord acknowledges an affirmative duty to mitigate Tenant's damages and shall in no event seek to accelerate rent.

3

For good and valuable consideration, Landlord agrees to the following provision: Notwithstanding any provision in the Lease to the contrary, <u>Landlord and Tenant agree that Tenant's liability upon default shall not exceed six . . . months base rent</u> or base rent for the remainder of the term, whichever is less. . . .

[(Emphasis added).]

The Sublease provides in relevant part:

([Section Four]) The Sublessee agrees to <u>perform and observe all of the obligations</u> of the Sublessor under the Master Lease and <u>make all rental payments directly to the Landlord</u> in the manner set forth in the Master Lease.  In addition to any indemnity and insurance provisions contained in the Master Lease, <u>the Sublessee agrees at all times during the term of this Sublease and for such period of occupancy, to indemnify, defend, and hold harmless the Sublessor . . . from and against all liability, injury, loss, cost (including attorneys' fees), damage and expense in respect of any injury or death of any persons and/or damage to any property while in or around the premise</u> and to obtain and maintain insurance in accordance with the Master Lease and the Franchise Agreements naming all such indemnified persons as additional insureds which shall be primary and non-contributory.

. . . .

([Section Six]) The purpose of this Sublease is so that the Sublessee can operate a SUBWAY® restaurant under the terms of a Franchise Agreement . . . . If at any time during the term of this Sublease, Sublessee shall default in the performance of any of the terms of the Master Lease or the Franchise Agreement, Sublessor may terminate this Sublease on ten . . . days written notice to Sublessee, and upon such termination,

4

Sublessee shall quit and surrender the leased premises to Sublessor but Sublessee shall remain liable for the balance of the rent due as provided in this Sublease. The Sublessee agrees that upon such default the Landlord may demand, receive and collect any monies due or thereafter falling due without in any manner affecting such default or any notice of suit, action, order or judgment related to the default. Upon termination of this Sublease, any payment made by the Sublessee to the Sublessor, Landlord or any court shall not: a) reinstate, continue or extend the term of the Sublease; b) affect any notice previously given to the Sublessee; or c) operate as a waiver of the right of the Sublessor to recover possession of the demised premises by proper suit, action, proceeding or remedy. All monies collected shall be deemed to be payments made in accordance with the terms of this Sublease or applied toward any outstanding balances owed by the Sublessee. . . .

The Sublessee agrees to pay to the Sublessor upon demand, as additional rent, any fees, costs or charges, including attorneys' fees and legal costs, incurred by the Sublessor in enforcing any of the terms or provisions of this Sublease, including without limitation for collecting any unpaid or late rental amounts or eviction proceedings. The Sublessor may charge interest on all past due amounts at the maximum legal rate in the jurisdiction . . . .

. . . .

([Section Ten]) The Sublessee shall not make any agreement with the Landlord which could modify, cancel or terminate the Master Lease.

[(Emphasis added).]

5

A-0957-24

B.  The Dispute

Patel operated the Subway franchise for several years before rent-payment issues arose during the height of the COVID-19 pandemic.  After paying April 2020 rent in full, Patel missed rent payments from May to August 2020.  In September 2020, Woodrose, Subway, and Keyur Patel signed a "COVID-19 Rent Relief Agreement" due to the pandemic's deleterious impact on business, providing Patel a temporary reduction in rent.  This agreement noted Subway was "in default of rent payment for the months of May 2020 through August 2020" and memorialized Woodrose's promise to accept reduced rent from August 2020 through December 2020, with normal rent resuming thereafter and created a payment schedule for the "outstanding principal balance."

Patel again stopped paying rent in April 2021.  Woodrose then offered a temporary extension of the reduced rent term in the summer of 2021.  The proposed extension agreement provided if any rent "[wa]s not paid as due[,] . . . the amount due w[ould] revert to [the] original lease for that month and every month that follow[ed] as established by the original lease" and "include not only monthly rent but also outstanding loans provided under previous rent concession."  However, Woodrose later rescinded the proposed extension when Subway did not accept or timely execute the written extension.

6

Patel alleges Subway also failed to communicate to Woodrose Patel's continued efforts to pay the reduced amount even after Woodrose rescinded the rent extension offer.

Although not paying rent, Patel continued occupying the premises until finally vacating in or around February 2023. Patel does not dispute this timeline, but alleges reduced rental payments were made until Woodrose refused to accept further rent after denying a reduced rent extension. Woodrose then filed suit to recover the amount due from Subway and Patel pursuant to the Master Lease and reduced rent amendments. In addition to answering Woodrose's complaint, Subway and Patel filed crossclaims against each other.

Subway's crossclaim against Patel alleged Patel was liable to Subway for any amount of money Subway might be ordered to pay Woodrose in connection with Patel's failure to pay rent, in addition to "reasonable costs and expenses (including attorney[s'] fees) that [Subway] incurs in defending against Woodrose's claims in this action," pursuant to sections four and six of the Sublease. Patel asserted a claim against Subway for "contribution" of its "proportionate share of any and all sums that may be adjudged against [Patel]." Patel also made a claim for "indemnification," arguing "liability [to Woodrose] resulted solely from secondary, imputed, vicarious or passive negligence, and/or

A-0957-24

intentional acts of . . . Subway"; any "losses were caused in whole or in part by the fault, carelessness, negligence, recklessness, or breach of duty in contract, trespass or negligence on the part of . . . Subway"; "Subway's liability is primary, based on its active fault, while [Patel's] is secondary"; and "should it be determined that [Patel] [is] liable, . . . [he] [is] entitled to recover against . . . Subway[] by way of indemnity."

Following execution of a settlement agreement by Woodrose, Subway, and Patel, Woodrose's complaint was "dismissed with prejudice and without attorneys' fees or costs" by stipulation dated March 13, 2024. The settlement agreement obligated Subway to "pay the lump sum of . . . $125,000" as "full and complete payment, satisfaction and final discharge of all of defendants' obligations under the Lease." The stipulation expressly stated "cross-claimant Subway['s] . . . and cross-claimant[] . . . Patel's respective cross-complaints are not dismissed." (Emphasis in original).

C. Motions for Summary Judgment and Reconsideration

Soon after resolution of Woodrose's claims, Subway moved for summary judgment[2] on its crossclaim against Patel. Subway argued it was undisputed

_____

[2] In support of its motion, Subway attached, among other exhibits, a portion of Patel's July 20, 2023 deposition in which Patel admitted he "stopped" paying

section four of the Sublease required Patel to pay rent and indemnify Subway for "all liability, injury, loss, costs (including attorney[s'] fees), damage, and expense"; Patel failed to pay rent between "May 2020 through August 2020," and again in April 2021; "Patel continued to operate . . . without paying rent to the Landlord for approximately eighteen . . . months"; "rent continued to accrue" after "Patel eventually abandoned the premises before the expiration of the Master Lease"; Subway "settled the dispute over unpaid rent . . . for $125,000"; and "Patel . . . failed to reimburse [Subway] in the amount of the settlement payment plus attorney[s'] fees and costs pursuant to Section [Four] of the Sublease."

Subway contended Sublease section four unambiguously required Patel to make all rental payments mandated "by the Master Lease directly to the Landlord and to reimburse [Subway] for all amounts [Subway] paid to the Landlord," and Subway "incurred damages because it was forced to settle" with Woodrose "due to Patel's default under the Sublease for $125,000." It further cited the Sublease as authorizing an award for "attorney[s'] fees . . . [incurred] defend[ing] the matter and enforc[ing] its rights under the Master Lease and

---

rent due to technical difficulties paying the reduced amount and "continued not to pay rent."

A-0957-24

Sublease." Subway contended it would not have incurred these damages if not for Patel's failure to comply with the Sublease obligations.

Subway further argued there remained no genuine issues of material fact, and Patel should not be excused from payment. Subway asserted Patel never paid the rent and instead continued to operate the restaurant, despite Patel's obligation to pay the monthly rent directly to Woodrose. Subway contended Patel's failing to pay or set aside rent for months and then abandoning the premises rendered the rescinded final rental reduction offer "immaterial." Subway further asserted it had no obligation to timely secure the extension of reduced rent for Patel and the Sublease created no obligation for Subway to indemnify Patel.

On June 25, 2024, Patel moved for partial summary judgment on the crossclaim against Subway, seeking to "cap[] any potential damages . . . at $12,600 as a matter of law," invoking as applicable to the Sublease arrangement the Master Lease provision "contractually limit[ing]" Woodrose's damages to $12,600, six months' base rent. Patel asserted the reduced rent was paid until Woodrose refused to accept it, but acknowledged knowing Woodrose rescinded the proposed extension of reduced rent. Patel alleged Subway unilaterally

A-0957-24

negotiated the settlement with Woodrose, cutting Patel out, and "failed to act diligently."

Attached to his motion were several email threads spanning August and September 2021. These emails purportedly evidenced Subway's acknowledgement Patel was "waiting on [Subway] to sign" a document resolving the rent issues; Patel's frustration with Subway's delays; a Subway representative's promise to Patel to "reach out" to Woodrose to resolve the issue; and direction from Valerie Tchikanda, whose email signature indicated she was a "Director of Operations" at "Subway Development CNJ and SI," that "HQ really needs to take care of this before the F[ranchise] O[wner] loses the store."

The record, including Keyur Patel's signature on the settlement agreement, further demonstrated Patel's inclusion in and awareness of settlement discussions with Woodrose and Subway. Settlement-related correspondence included Patel's legal counsel. This included a February 2024 email reflecting Subway's counsel communicating a settlement figure to Woodrose's counsel with Patel's counsel copied on the correspondence. Neither party disputes Patel's counsel proposed alterations to the settlement language.

On July 17, 2024, the trial court entered an order denying Patel's cross-motion for summary judgment and granting Subway's motion for summary

A-0957-24

judgment against Patel in the amount of $125,000 and awarding attorneys' fees and costs. It directed Subway to submit an itemized summary of its legal fees.

In its accompanying written statement of reasons, the court concluded Patel failed to raise a genuine issue of material fact and never demonstrated how Subway's role in the landlord-sublessee relationship "caused Subway to be at fault for the $125,000 Patel failed to pay." The court also found "Patel was not closed off from settlement talks," citing Keyur Patel's signature on the settlement agreement, inclusion of Patel's counsel in settlement negotiations, and Patel's counsel's proposing modifications to settlement language. Lastly, the court determined, "as a matter of law, the limitation on lawsuit provision in the [Master] [L]ease between the landlord Woodrose and Subway [wa]s not applicable to Patel," as no term of the Sublease extended that provision to Patel.

On August 5, 2024, Patel moved for reconsideration. Patel again highlighted the extent of Subway's control over Patel's relationship with Woodrose as well as Subway's delays. Patel asserted genuine issues of material fact existed regarding Subway's fault in causing damages by thwarting Patel's ability to secure the agreement of continued reduced rent from Woodrose. Patel emphasized the emails memorializing Subway's awareness of the impact of its delay in securing a further rent reduction. Patel asserted defenses like

A-0957-24

"avoidable consequences" and "unclean hands" were open issues of disputed fact that should have reached a jury. Patel's counsel acknowledged at oral argument Patel "could have paid this" or "could have put money into escrow," but did not due to "spending resources in fighting this litigation."

Subway argued Patel's motion raised no new arguments and merely sought "a second bite at the apple." Subway again argued the court correctly determined Patel's failure to pay any rent for "[eighteen] months while continuing to operate the business at the premises" and "abandon[ing] the premises prior to the expiration of the lease" "had nothing to do with the rent relief agreement." Subway noted "Patel could have paid the full rent or put the rent aside . . . until the dispute was resolved, but failed to do so." Regarding the Valerie Tchikanda email cited by Patel, Subway clarified Tchikanda was another franchisee, not a representative of Subway.

In an oral decision, the court explained it was denying reconsideration, finding no basis to revisit its earlier order. The court again noted no dispute remained, as Patel failed to pay rent it was obligated to pay and was not excluded from the Woodrose settlement negotiations. The court then granted Subway time "to file an updated certification for attorneys' fees." An order dated the same day denied Patel's motion in its entirety.

A-0957-24

D.  Counsel Fees

On September 6, 2024, Subway filed the certification of attorney Frank A. Reino in support of attorneys' fees and costs attaching nearly sixty pages of itemized bills. After detailing the background information of his firm, and the specific attorneys and staff who worked on Subway's case, Reino certified the three years of counsel fees and costs totaled $174,126.37.[3] He characterized the amount due as "substantial" but noted these fees and costs "are Fisher Zucker's usual rates, and those rates are reasonable in the State of New Jersey." He also explained this matter "was expensive because [Subway] was forced to defend against the landlord and then pursue its claim against []Patel." He further described that "Fisher Zucker . . . represented [Subway] since the inception of this matter" and as such "billed [Subway] a total of more than 354 hours . . . over the course of approximately three years."

Patel opposed, arguing section four of the Sublease did not permit an award for attorneys' fees and costs in this case as that section only mentioned

---

[3]  The attached bills appear to total 338.7 hours billed at $475 per hour; 2 hours billed at $460 per hour; 1.9 hours billed at $410 per hour; 6.8 hours billed at $325 per hour; 4.5 hours billed at $185 per hour; 0.5 hours billed at $195; and $8,404.87 for expenses. These bills indicate Subway made all payments due prior to Patel's motion for reconsideration. We have excluded additional hours listed as not charged or "NC" in this calculation.

A-0957-24

cases relating to "injury or death or any person and/or damage to any property" not "contractual dispute[s]." Patel further contended a fee and cost award of $174,126.37, when the principal judgment amount was $125,000, "would be unreasonable given that such a request is more than 140% of the judgment granted." Patel cited instances of "duplicative and excessive billing" and "various entries for purported out of pocket costs without invoices," or "any certification confirming that the alleged fees were actually paid by [Subway]."

On October 25, 2024, the court entered a final judgment "in favor of Subway . . . and against . . . Patel in the amount of $125,000 plus post-judgment interest and attorney[s'] fees and costs in the amount of $174,126.37, for a total judgment of $299,126.37 plus-post judgment interest." In its accompanying statement of reasons, the court found Patel was obligated to pay fees under the Sublease, citing section four as applicable to contractual disputes. It recognized the fees exceeded the judgment amount, but found the fees reasonable. The court reasoned the number of hours expended did not "exceed those that competent counsel reasonably would have expended" and were "set forth in sufficient detail," citing Rendine v. Pantzer, 141 N.J. 292, 336-37 (1995), rejecting Patel's contention the hours were "excessive and duplicative" and highlighting Subway reduced the usual hourly rates in accordance with typical

15

market rates. It concluded these considerations supported granting the full $174,126.37 in attorneys' fees and costs requested.

## II.

Patel appeals from the three orders. Patel argues the court erred in granting summary judgment in favor of Subway on its claims against Patel, and in denying Patel's cross-motion, because genuine issues of fact existed for a jury to determine Subway's fault and responsibility for the damages. Patel further asserts the court erred in finding Patel was not excluded from settlement negotiations and contends the Woodrose settlement terminated any liability Patel may have had. According to Patel, the trial court compounded its error by failing to limit Subway's recovery from Patel to the cap on damages set forth in the Master Lease.

Patel argues the court improperly denied reconsideration, and likewise incorrectly awarded attorneys' fees. Patel contends the fees were not authorized by the Sublease and challenges the fee award as unreasonable and disproportionate to the damage award.

## III.

"We review de novo the trial court's grant of summary judgment, applying the same standard as the trial court." Abboud v. Nat'l Union Fire Ins. Co., 450

16

N.J. Super. 400, 406 (App. Div. 2017) (citing Templo Fuente de Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 450, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

A.

We first consider and reject Patel's argument the court improperly interpreted the leases to find Patel liable for the damages incurred by Subway in the Woodrose rent collection litigation. The undisputed record demonstrates the Sublease required Patel's payment of rent to Woodrose, and Patel failed to pay

17

rent for months, first occupying and then abandoning the premises in violation of the Sublease's terms.

"It is well-settled that '[c]ourts enforce contracts based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.'" In re Cnty. of Atl., 230 N.J. 237, 254 (2017) (alteration in original) (quoting Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014)) (excess internal quotation marks omitted). "'[I]f the contract into which the parties have entered is clear, then it must be enforced' as written." Ibid. (alteration in original) (quoting Maglies v. Est. of Guy, 193 N.J. 108, 143 (2007)). "We cannot 'rewrite a contract for the parties better than or different from the one they wrote for themselves.'" GMAC Mortgage, LLC v. Willoughby, 230 N.J. 172, 186 (2017) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).

Here, as the trial court correctly found, the operative language in the Sublease is plain and unambiguous. Sublease section four required Patel "to perform and observe all of the obligations of [Subway] under the Master Lease," including the regular payment of rent "and mak[ing] all rental payments directly to" Woodrose. Sublease section six required Patel "to pay to [Subway] upon demand, as additional rent, any fees, costs or charges, including attorneys' fees

A-0957-24

and legal costs incurred by [Subway] in enforcing any of the terms or provisions of this Sublease, including without limitation for collection any unpaid rent."

The core facts regarding the rental dispute are similarly clear and undisputed. Patel admitted to repeatedly failing to pay rent as obligated. Although once agreeing to reduced rent, Woodrose lawfully discontinued the reduction, and ultimately filed suit against Subway and Patel seeking to recover that unpaid rent. After settlement negotiations with notice to Patel, Woodrose dismissed its complaint in exchange for Subway's agreement to pay Woodrose $125,000 in outstanding rent. Subway, citing the Sublease, then sought to recover that settlement amount from Patel. Affording the Sublease terms their plain meaning, and as the trial court correctly determined, Patel was liable to reimburse Subway for those damages, as they flowed directly from Patel's non-payment as obligated under the Sublease.

We note Sublease section six acknowledges Subway's right to recover from Patel Subway's expenses in relation to any action for unpaid rent. Thus, we are further convinced the trial court correctly found no basis for a jury to conclude Patel was other than liable to Subway for the $125,000 it incurred in settling a lawsuit based on Patel's systemic failure to pay rent.

19

B.

We are similarly unpersuaded by Patel's argument the court improperly granted summary judgment to Subway, and denied Patel summary judgment, without considering "Subway failed to act diligently in connection with the COVID-19 relief dealings with [Woodrose]" and "cut [him] out of the settlement agreement negotiations." Once again, the Sublease's terms undermine Patel's claims.

Relevant here, Patel acknowledged section ten of the Sublease conferred no right or power to Patel to modify the rental agreement between Subway and Woodrose. Specifically, section ten stated: "[Patel] shall not make any agreement with [Woodrose] which could modify, cancel or terminate the Master Lease." Thus, by the contract's plain terms, Patel could not negotiate or modify the terms of the Master Lease; that remained Subway's province. Patel's emails reflecting frustration with Subway aside, the record did not contain evidence of Subway's obligation to secure a further rental reduction on Patel's behalf; nor did it support Patel's defenses proceeding to a jury.

Although a party may have a duty to mitigate damages, see Ingraham v. Trowbridge Builders, 297 N.J. Super. 72, 82-83 (App. Div. 1997) (quoting McDonald v. Mianecki, 79 N.J. 275, 299 (1979)) (recognizing "injured parties

20

have a duty to take reasonable steps to mitigate damages" as "[d]amages will not be recovered to the extent that the injured party could have avoided his losses through reasonable efforts"), this duty only commences when "a party has reason to know that performance by the other party will not be forthcoming," id. at 83 (quoting Restatement (Second) of Contracts, § 350, cmt. b (A.L.I. 1981)). Here, the record did not reflect Subway's awareness Patel would refuse to pay rent and Woodrose would file suit to collect. Like the trial court, we do not view the correspondence between Patel and Subway as indicative of fault on Subway's part. Further, Patel and Subway had agreed to the indemnification provision within the validly executed sublease.

We recognize every contract contains an implied covenant of "good faith and fair dealing." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224 (2005). "The covenant of good faith and fair dealing calls for parties to a contract to refrain from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive' the benefits of the contract." Id. at 224-25 (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965)). However, "[p]roof of 'bad motive or intention' is vital" as "[t]he party claiming a breach of the covenant of good faith and fair dealing 'must provide evidence sufficient to support a conclusion that

21

the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" Id. at 225 (first quoting Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001); then quoting Williston on Contracts § 63:22, at 513-14 (Lord ed. 2002)).

The record is devoid of evidence supporting a claim Subway acted with nefarious purpose or malintent to injure or undermine Patel's ability to pay rent. No evidence supports the inference Subway delayed signing the reduced rent agreement with purpose to deny Patel the benefit of the Sublease. The Sublease reflects the singular requirement that Patel pay the full base rent monthly to Woodrose; Subway's failure to secure a continued reduced rent for Patel was not contemplated by or required under the Sublease.

Under the Sublease, agreed to by Patel, Subway retained sole discretion to negotiate with Woodrose as to all rental matters. The Sublease did not provide for Subway's acting to secure a lower rent for Patel should the opportunity arise or circumstances warrant. We are thus satisfied the court properly granted summary judgment in favor of Subway and denied Patel's cross-motion as the record, even when viewed most favorably to Patel, failed to show some evidence of Subway's contractual obligation to timely sign a

22

continued rent reduction agreement with Woodrose or raise a jury question concerning Subway's fault.

## C.

Patel's argument the trial court also erred in finding no disputed facts regarding Patel's inclusion in settlement negotiations similarly lacks merit. Keyur Patel's signature on the settlement agreement and the inclusion of Patel's counsel on emails discussing the settlement agreement prior to its execution belie the otherwise unsupported claim. And we need not look beyond the signed settlement agreement's clear language to reject the contention Patel was somehow released from liability upon the execution of the settlement agreement. It suffices to simply view the agreement's clear acknowledgment: "[N]othing in this Settlement Agreement or the dismissal with prejudice filed by [Woodrose] shall have any effect on potential or already filed crossclaims among and between defendants, and these crossclaims among and between defendants survive this Settlement Agreement."

Patel also contends the trial court erred in denying his motion for partial summary judgment because the Master Lease's limitation on damages provision applies to him and as such, the maximum damages recoverable against him is

23

$12,600 equaling six months' base rent. This argument fails fundamentally as Patel is not a party to the Master Lease.

N.J.S.A. 2A:15-2 provides: "A person for whose benefit a contract is made, either simple or sealed, may sue thereon in any court and may use such contract as a matter of defense in an action against him." Our Supreme Court clarified in making this determination, the "focus[] [is] on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement." Broadway Maint. Corp. v. Rutgers, State Univ., 90 N.J. 253, 259 (1982). This inquiry is "fact-sensitive" requiring "the court [to] examine the terms and conditions of the agreement to determine whether the non-party to the contract was an intended or incidental beneficiary." Id. at 263.

Significantly, "[t]here is no privity of contract, . . . or estate between the landlord and the subtenant" and "[t]he sublease vests no right in the sublessee to enforce the sublessor's agreement contained in the original lease." Berkeley Dev. Co. v. Great Atl. & Pac. Tea Co., 214 N.J. Super. 227, 235 (Law Div. 1986) (citing Wehrle v. Landsman, 23 N.J. Super. 40, 46 (Law Div. 1952)); see also Cifelli v. Santamaria, 79 N.J.L. 354, 356 (1910) (recognizing a subtenant "ha[s] no privity with the landlord . . . and cannot take advantage of the landlord's

24

covenants with the lessee"); <u>Marino v. Mendez</u>, 243 N.J. Super. 342, 347 (App. Div. 1989) ("there is no privity of contract" between a landlord and a subtenant); Martin F. Dowd et al., <u>Commercial Real Estate Transactions in NJ</u> § 2.6 (2010) ("With a sublease, no privity of estate is created between the landlord and the subtenant.").

Here, Woodrose and Subway are the sole parties to the Master Lease. Subway, as tenant in that agreement, fashioned terms limiting its liability to six months' outstanding rent upon default. The Master Lease does not contain any provision extending this limitation to a sublease. Further, there is no term in the Sublease blanketly incorporating the Master Lease or its limitation of liability. Thus, as Patel is not a party to or an intended beneficiary of the Master Lease, the rental cap provision is not applicable to the sublease agreement. Accordingly, we find Patel's attempt to enforce a provision of the Master Lease unavailing.

IV.

Having concluded the trial court correctly decided the summary judgment motions and also discerning no error in the trial court's finding Patel did not advance any new arguments, facts, or other proper bases for reconsideration, we reject Patel's claim the court abused its discretion when it denied Patel's

A-0957-24

reconsideration motion. A dissatisfied litigant's desire to reargue an unsuccessful motion does not warrant reconsideration. Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Reviewing with deference the court's finding, we perceive no misuse of discretion. See R. 4:49-2 ("[A] motion for . . . reconsideration . . . shall state with specificity . . . the matters or controlling decisions that counsel believes the court has overlooked or as to which it has erred[.]"); see also Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

V.

Well-settled principles govern our review of a trial court's award of counsel fees, and we review an award of counsel fees and costs for an abuse of discretion. See In re Will of Landsman, 319 N.J. Super. 252, 271 (App. Div. 1999). We "reverse a trial court's award of fees and costs . . . when the court's decision 'was based on irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Hansen v. Rite Aid Corp., 253 N.J. 191, 212 (2023) (quoting Garmeaux v. DNV Concepts, Inc., 448 N.J. Super. 148, 155-56 (App. Div. 2016)).

New Jersey courts permit a prevailing party to recover attorneys' fees "if they are expressly provided for by . . . contract." Packard-Bamberger & Co. v.

26

Collier, 167 N.J. 427, 440 (2001). Here, the trial court observed Patel's "obligation to pay attorney[s'] fees [wa]s set forth in section [four] of the Sublease." Patel contended the trial court incorrectly viewed Sublease section four, as authorizing fee awards beyond those for personal injury or property damage.

Section four provides Patel agrees to

> indemnify, defend, and hold harmless [Subway] . . . from and against all liability, injury, loss, cost (including attorneys' fees), damage and expense in respect of any injury or death of any persons and/or damage to any property while in or around the premise and to obtain and maintain insurance . . . .

The trial court evidently viewed the plain language as listing items for which Patel would indemnify Subway, with damages for injury or death constituting a separate item on that list, separate from "liability," "loss," or "cost (including attorneys' fees)"—a fair interpretation given the structure of the provision and the sentence as a whole.

However, even assuming for purposes of argument the court's interpretation of section four was incorrect, we fail to view harm in that arguable error, as section six of the Sublease expressly authorizes counsel fees in these circumstances. Section six provides:

27

> [Patel] agrees to pay to the [Subway] upon demand, as additional rent, <u>any fees, costs or charges, including attorneys' fees and legal costs, incurred by the Sublessor in enforcing any of the terms or provisions of this Sublease</u>, including without limitation for collecting any <u>unpaid or late rental amounts</u> or eviction proceedings.
>
> [(Emphasis added).]

Invoking section six, Patel "agree[d] to pay . . . any fees, costs or charges, including attorney[s'] fees and legal costs" related to the non-payment of rent by Patel under the Sublease. Accordingly, we determine the trial court reached the proper conclusion: The Sublease allows Subway to recover attorneys' fees in this case.

We next consider the reasonableness of the award. "In determining the reasonableness of a counsel fee award, the threshold issue 'is whether the party seeking the fee prevailed in the litigation.'" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 570 (1999)). The prevailing "party must establish that the 'lawsuit was causally related to securing the relief obtained; a fee award is justified if [the party's] efforts are a necessary and important factor in obtaining the relief.'" Ibid. (alteration in original) (quoting N. Bergen, 158 N.J. at 570). We deem these initial requirements met as Subway's successful

crossclaim sought recovery for the funds paid to settle and dismiss Woodrose's complaint seeking to recover rent unpaid by Patel.

"The next step in determining the amount of the award is to calculate the 'lodestar,' which is that number of hours reasonably expended by the successful party's counsel in the litigation, multiplied by a reasonable hourly rate." Ibid. (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21 (2004)). RPC 1.5(a) prescribes that "[a] lawyer's fee shall be reasonable," and sets forth relevant factors in determining the reasonableness of attorneys' fees. This "list is not exhaustive and all factors will not be relevant in every case." Twp. of W. Orange v. 769 Assocs., LLC, 198 N.J. 529, 542 (2009). Further, "[t]he award need not be proportionate to the damages recovered." Garmeaux, 448 N.J. Super. at 160 (citing Furst, 182 N.J. at 23); see also Grow Co. v. Chokshi, 424 N.J. Super. 357, 368 (App. Div. 2012).

Here, the trial court identified the relevant law, including RPC 1.5(a), after consulting Subway's counsel's detailed certification and approximately sixty pages of attached bills for fees and costs. The court found "all fees" requested by Subway in Reino's certification "[we]re reasonable" and stated the circumstances of the case do not "demonstrate that the hours expended, taking into account the damages prospectively recoverable, the interests to be

vindicated, and the underlying statutory objectives, exceed those that competent counsel reasonably would have expended to achieve a comparable result" and Subway provided "sufficient detail" supporting the amount of billable hours citing Rendine, 141 N.J. at 336-37. The court further found the billable hours were "not excessive and duplicative" and noted the hourly rates were typical of the market again citing Rendine. The court noted reasonableness and proportionality are not synonymous and proportionality is not the test. As such, we are satisfied the court adequately considered the record in light of applicable law and exercised its discretion in awarding Subway the full amount of fees requested.

Thus, according deference to the trial court and recognizing fee awards should be overturned "only on the rarest occasions," Hansen, 253 N.J. at 212 (quoting Rendine, 141 N.J. at 317), we will not disturb the court's determination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0957-24